MERCHANTS AND FARMERS BANK v. BANK OF WINONA.

[64 South. 210.]

1. BILLS AND NOTES. *Bona fide holder. Purchaser. Burden of proof. Actions. Admissibility of evidence. Pleading Proof.*

The holder of negotiable paper is presumed to be a *bona fide* holder for valuable consideration until something be shown in disparagement of his title; and he is not bound to show that he has given value for the paper, or that he took it before maturity, until the adverse party has shown the want, or failure, or illegality of the consideration, or that it was lost or stolen from the rightful holder, or that the holder came to the possession of it fraudulently.

2. SAME.

Proof of the fraud of the payee of a note, imposes upon him the duty of showing that he is a purchaser for value and in good faith.

3. BILLS AND NOTES. *Bona fide purchaser. Burden of proof.*

The title to a note payable to bearer may be conveyed by a delivery of the note, and one in possession of such a paper is *prima facie* the owner of same, and *prima facie* the holder is an innocent purchaser for value, but when circumstances in evidence show that the payee from whom the holder claims, came into possession of the note by fraud upon the maker, then the holder must show good faith.

4. BILLS AND NOTES. *Bona fide purchaser.*

Receiving property merely as security for a pre-existing debt does not constitute the holder a purchaser for value and by reason of our noncommercial statute, the same rule applies to bills of exchange and notes taken as security for a debt.

5. PLEADING. *Conclusions.*

In a suit by the assignee upon a promissory note where the plea to plaintiff's declaration sets up the defense that the notes in question were assigned to plaintiff as a security for a pre-existing indebtedness, a replication by plaintiff merely saying that the note was purchased by it in the usual course of business, and that it was a *bona fide* purchase for value, should on mo-

tion be stricken out, since such replication does not deny the facts set up in the plea, but simply pleads a conclusion of law.

6. BILLS AND NOTES. *Bona fide purchaser. Proofs.*
    Under the facts disclosed by the record in this case and excluded from the jury, the court holds that the plaintiff should have been put to the proof of its good faith and required to produce evidence to show that it was a *bona fide* purchaser for value.

APPEAL from the circuit court of Carroll county.
HON. E. V. HUGHSTON, Special Judge.
Suit by the Bank of Winona against the Merchants and Farmers Bank. From a judgment for plaintiff defendant appeals.
The facts are fully stated in the opinion of the court.

*Noel, Boothe & Pepper,* for appellant.

The court erred in overruling the motion to strike out the replication to appellant's second plea, which plea alleged appellee's claim to the notes sued on was merely that of a holder of said notes, as collateral for pre-existing indebtedness, with no other consideration. The replication did not traverse the allegation of mere security for the pre-existing indebtedness, which defense was thus denied and overruled, erroneously. *First National Bank v. Strauss,* 66 Miss. 779; *Robertshaw v. Britton,* 74 Miss. 873; *Thigpen v. M. C. R. R. Co.,* 3 Geo. 351-2; *Smith v. Elder,* 14 S. & M. 104.

The court erred in excluding the testimony of appellant and in granting a peremptory instruction for appellee. *First National Bank v. Strauss,* 66 Miss. 779; *Dodge v. Cutrer,* 58 So. 208; *Netterville & Boyd v. Stevens & Pillett,* 2 How. 645; *Smith v. Prestidge et al.,* 6 S. & M. 484.

*Monroe McClurg,* for appellant.

Ogden's Negotiable Instruments, sec. 126, page 113, says that a *bona fide* holder for value without notice is:

"A holder in due course is a holder who has taken the instrument under the following conditions: First, that it is complete and regular upon its face; second, that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; third, that he took it in good faith and for value; and fourth, that at the time it was negotiated to him, he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as holder in due course."

The Negotiable Instrument Law provides: "The title of a person who negotiates an instrument is defective within the meaning of this act when he obtains the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Bolles on the Modern Law of Banking (1907) at page 241, says: "But a pledgee to whom a certificate is endorsed in blank with the right to sell, if necessary to reimburse himself, has no right to repledge it; consequently, the new pledgee acquires no right thereto, for the form of the original pledge should put him on inquiry. Nor can the original contract be destroyed by any usage, authorizing the pledgee to repledge the stock. Still weaker, if possible, is the defense in such a transaction

after the original loan has been fully repaid, though the security remains in the original pledgee's possession.'' 31 Cyc. Law & Pro., p. 850, par. 2.

Mr. Colby in his excellent work on Replevin (1890) in chapter IX, states the rule of law to be that, one dealing with a bailee is the same as if dealing with an agent and must inform himself as to the authority of the bailee to contract. He is at his peril to know the extent the original bailor has given the bailee to deal with the property. He says: ''A purchaser from an agent without authority, even though the purchaser pay full value and acts in good faith, carries no title, and the owner may sustain replevin.'' And in section 209, the author says: ''Where an agent sold the goods to his own creditor, thus paying his own debt, the title of the owner is not thereby divested, and he may bring replevin against even a subsequent purchaser without notice.''

Stearns on the Law of Suretyship (1903), treating of blank endorsement, as by Blackston of the Boatmen notes, or by Blackston of these notes pledged, announces the law to be: ''In other words, if the parties make no definite contract between themselves, the law will supply the deficiency, and make it for them. But, if the parties in fact agree upon terms mutually satisfactory to themselves, different from those implied by law, they should be permitted to stand upon those terms, as being the real contract, although not expressed in writing, rather than force upon them by implication, a contract that they did not intend.'' 66 Penn. 481.

Bolles' Modern Law of Banking, volume 1, chapter XI, pages 392 and 395, cites decisions from the supreme courts of Alabama, Kentucky, Federal Reports, United States, New Jersey, Massachusetts, Vermont, Louisiana, Maine, and Washington, to sustain the proposition that: ''When two banks had mutual dealings for two years, knowledge of which the directors could have obtained by examining the books, they must be presumed to have had knowledge of the transaction.''

"There are two kinds of agreements which control the operation of bills and notes, which are designated as memoranda on the face or back of the instrument, collateral or independent agreements. The advantage of having the memorandum on the bill or note is that it will furnish actual or constructive notice to all subsequent holders (such as, "as delivered to you and now in your possession" in this case) whereby it will control the operation or character of the instrument, whereas a collateral agreement can only control the operation or character of the instrument as to those parties who have received actual notice of its existence." Ogden on Negotiable Instruments (1909), Sec. 55. We have shown that defendant had actual knowledge, or could have had by ordinary law-imposed inquiry and is chargeable with it independently of the significant notation on the back of one of the notes. In Sec. 236 (1907), the same author says: "But if the assignee knows the facts, so that the note cannot be said to have been assigned *bona fide,* the maker may set up such facts in defense. And, if a note is given without consideration, and is endorsed by the payee without consideration, the maker will not, it is held, be precluded from showing these facts by way of defense to a suit brought by the assignee." And in the next section he lays down the rule to be, "So, where assignees occupy the same position as the payee would, had he sued, the rule permitting a defense of failure of consideration, as between the original parties, would apply." At the end of the same section the author states that "the want of consideration, or the failure of consideration for negotiable paper between the parties to it, constitutes no defense against it in the hands of a *bona fide* endorsee or holder without notice or knowledge of any facts tending to invalidate the note." Transpose this reading without changing the meaning and we have, the endorsee or holder with notice or knowledge of any facts tending to invalidate the note, is *mala fide* and cannot stand.

For a circumstance showing the necessity for inquiry, in a South Dakota case, reported in 29 L. R. A. (N. S.) (1908) 351, a note on page 356, says that, "The offer for sale by a stranger residing outside of the state, to an individual, of a note, endorsed to him without recourse, which had been procured from the maker by fraud, at a place other than that of the maker's residence, is a circumstance calculated to arouse suspicion in the mind of a prudent person, so that his purchase without inquiry may destroy his *bona fides* and prevent his enforcing the note against the maker." See, also, *McKnight* v. *Parsons*, 22 L. R. A. (N. S.), 718, 721; 63 Am. Dec. 633; Iowa, Arkansas, New York, Delaware, Georgia, Alabama, Vermont, Tennessee, Connecticut, Massachusetts, South Dakota, Minnesota; 11 Wall. (U. S.); 104 U. S.; 2 Ency. Evid., 524, note 48; Am. & Eng. Ann. Cases, 660; 128 U. S. 590; 153 and 200 Ind; *Beach* v. *Nevins*, 162 Fed. 129, 18 L. R. A. (N. S.) 288.

Knowledge of the officers of a bank is imputed to the bank. That of the president always. 133 U. S. 566; 110 U. S. 7-15; 130 U. S. 267; 3 Cyc. 122, citing 101 U. S. 320; 1 Pet. 299; 15 Wall. 165; 10 Wall. 604; 186 U. S. 342, reaffirmed in 205 U. S. 527; 145 U. S. 435-443; 150 U. S. 1063; 147 U. S. 59; 94 U. S. 429; 150 U. S. 231; How. U. S. 343; 141 U. S. 50-71; *Harkness* v. *Russell*, 118 U. S. 663.

The specification of a particular consideration in a promissory note plain or sealed, may be varied by good evidence and the real consideration shown. *Palen* v. *James*, 45 Miss. 129, *Meyer* v. *Casey*, 57 Miss. 615, *Cook* v. *Blackbourn*, 57 Miss. 689.

After all, aside from set-offs and defenses before notice our laws differ very little from the Law Merchant. The statute in force at the time of the negotiations now in question reads as follows:

"Promissory notes, other writings, and the vendor's lien assignable; defenses. All promissory notes, and

other writings for the payment of money or other things, may be assigned by indorsement, whether the same be payable to order or assigns or not, and the assignee or indorsee may maintain such action thereon, in his own name, as the assignor or indorser could have maintained; and in all actions on such assigned promissory note, bill of exchange, or other writing for the payment of money or other thing, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts and set-offs made, had or possessed against the same previous to notice of assignment in the same manner as though the suit had been brought by the payee; and the assignee or indorsee of any such instrument may maintain an action against the person or persons who may have indorsed the same, as in the case of inland bills of exchange, but when any debt shall be lost by the negligence or default of an assignee or indorsee, the assignor shall not be liable on the assignment or indorsement. The assignee of a claim for the purchase-money of land may enforce the vendor's lien as the vendor could." Miss. Code, 1906, sec. 4001, page 1100.

It will be seen from decisions of our supreme court, especially in *Brown* v. *Bank,* 62 Miss. 754, that in a case like this, the "Law Merchant" is the general rule where the note or bill is made payable to bearer. It is defenseless against an innocent holder, in good faith for value and without notice, a *bona fide* holder. But, the same de-defense is allowed against a holder who has not all of the adjectives to his credit. Like Caesar would have his wife be, he must be "above suspicion." As herein above shown, information that even tends, or a duty slightly neglected in important transactions, robs him of his pretended virtues.

In a varied state of the case, the following authorities sustain the position under cover of which the plaintiff seeks to take shelter, to wit: That a *bona fide* holder, for value paid, without notice of defenses, of a bill or

note or written obligation is protected by the law merchant, save as to those exceptions named in our ante-commercial statute. See *Meggett* v. *Baum,* 52 Miss. 22; *Ethridge* v. *Gallager,* 55 Miss. 642; *Hawkins* v. *Neal,* 60 Miss. 256; *Brown* v. *Bank,* 62 Miss. 754; *Boswell* v. *Thigpen,* 75 Miss. 308. However, *Robertshaw* v. *Britton,* 74 Miss. 873, is in line with defendant's contention here.

There can be no difference in prohibition by an express statute, such as dealing in future contracts, and one provided by express decisions as to such fraudulent contracts. The protection is precisely the same against ''a contract in violation of public policy, or a positive rule of law, or against good morals, and will not be enforced, even at a suit of an innocent transferee, although it be evidenced by a promissory note payable to bearer.'' This covers our case. *Gray* v. *Robinson,* 95 Miss. 1 (5); *Montjoy* v. *Bank,* 76 Miss. 402 (406).

''Incurable infirmity infected the contract and it was in no way helped by transfer, however innocent may have been the transferee, or what value was paid.'' *Deans* v. *Robertson,* 64 Miss. 195; *Hoyle* v. *Shirley,* 94 Miss. 466; *Virden* v. *Murphy,* 78 Miss. 515; *Simmons* v. *Atkinson,* 69 Miss. 762.

''No precise definition of fraud is attempted to be given, lest knavish ingenuity should evade it.'' Silence may become a fraud. *Stratton* v. *Bryant,* 35 Miss. 261 (275). The question of fraud must be determined by the facts of each particular case.

*Hill & Knox,* for appellee.

''A note signed by an agent of a corporation authorized generally to give notes on its behalf is enforceable by a *bona fide* holder thereof, though the officer or agent exceeded his authority in executing the note in question. The authority of an officer to sign notes on behalf of a corporation need not appear in the by-laws, nor be expressly given by a vote of the trustees or stock-holders.''

See *Merchants National Bank* v. *Citizens Gas Light Company,* 38 Am. St. Rep. 453.

"A bank is answerable for the acts of its cashier done within the apparent, though not within the real scope of his agency." See *Havens* v. *Bank of Tarbora,* 95 Am. State Rep. 627; and at page 630 of said authority we find the following: "Whenever one of the two innocent parties must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." See *Lickbarrow* v. *Mason,* 2 Term Rep. 70. And also we find the following at said page: "It is well said by Lord Holt in *Hearn* v. *Nichols,* 1 Salk 289, "For seeing somebody must be a loser by this deceit, it is more reason that he that employs and puts a trust and confidence in the deceiver should be a loser than a stranger." And also, "Where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposed a confidence, or by his negligent conduct made it possible for the loss to occur, must bear the loss." *Wilmington, etc., R. R. Co.* v. *Kitchen,* 91 N. C. 39.

His acts within the general business and usage of the bank will bind it in favor of third persons without notice. See 22 Wend. 348; *Lloyd* v. *West Br. Bank,* 15 Pa. St. 172; *Mostum* v. *Mass. Natl. Bank,* 1 Holmes, 396.

"The *bona fide* holder for value and without notice of a promissory note payable to bearer, is not affected by any equities between the original parties thereto." See *Mercian & Sears* v. *Haley Cotton,* 34 Miss. 64.

In a suit by a holder of a note payable to bearer, no defense existing between the original parties can be set up in bar of a recovery, unless it be shown that the plaintiff is the holder of the note without valuable consideration, or with notice, actual or constructive of the equities existing between the original parties. The holder of a promissory note is *prima facie* a *bona fide* holder and for value." See *Thomas* v. *Winstead* v. *Francis Davis, Admr.,* 40 Miss. 785.

"The holder of a bill of exchange payable to drawer and by him indorsed in blank is *prima facie* a *bona fide* holder for value." See *Gillespie, Admr.,* v. *Oil Mill,* 76 Miss. 406.

"A note payable to the maker's order and by him indorsed in blank before delivery is in effect payable to bearer, and therefore, not being subject to our anti-commercial statute, section 3503, Code 1892, no defense existing between the original parties can be set up as against a holder who acquires the note in good faith for value before maturity." See *Bank* v. *Wofford,* 71 Miss. 711.

"A promissory note or bond payable to bearer is by the terms of the instrument payable to whomsoever may lawfully hold it, and is negotiable at common law, the title passing by mere delivery. At common law a *bona fide* holder by assignment for a valuable consideration of a bond or note payable to bearer, is not affected by any equity existing between the maker or obligor and the person to whom he originally delivered it; and the rule is the same in this state." See *Craig* v. *City of Vicksburg,* 31 Miss. 216.

"A *bona fide* holder for value of a lost bond is entitled to recover the full amount of principal and interest due thereon, notwithstanding he may have had a suspicion and good grounds for suspicion of defect in the title and been guilty of gross negligence in respect to it at the time of the transfer. His title will not be defeated unless he was also guilty of bad faith." See *N. O. J. & G. N. R.* v. *Miss. College,* 47 Miss. 560.

"Note transferable by delivery, if not overdue or apparently dishonored, may, in the ordinary course of business in good faith and for valuable consideration, be transferred so as to vest valid title in the transferee, although stolen from the true owner or deposited with the transferor for some special purpose, and without authority to transfer it." See *Wheeler* v. *Guild et al.,* 32 Am. Dec. 231.

"*Bona fide* holder for value of note indorsed in blank and fraudulently transferred by a bailee, is entitled to hold the same against the true owner and to recover the amount thereof." See *Caruth* v. *Thompson*, 63 Am. Dec. 559.

"Commercial paper in the hands of a *bona fide* purchaser for value, before maturity, is not subject to defense which would be available against the original payee, unless it is shown that such purchaser had notice of such defenses." See *Merchants Natl. Bank of LaFayette Ind.* v. *Norris et al.*, 51 So. 15, 57 So. 72, 8 Cyc., pp. 56, 57; *Walters* v. *Tielkemeyer*, 72 Mo. App. 371; *United States* v. *Read*, 2 Cranch C. C. (U. S.), 159, 27 Fed. Cas., No. 16125.

Knowledge acquired by a bank president while solely acting for himself in his own interest is not notice to the bank. See *Seaverns* v. *Presbyterian Hospital*, 173 Ill. 414.

Notice to an officer personally interested is not notice to the corporation. See *Victor & Company* v. *National Bank*, 15 Utah, 391; 10 Cyc. 1063, par. 3; *Davenport First National Bank* v. *Gifford*, 47 Iowa, 575; *First National Bank of Highstown* v. *Christopher*, 29 Am. Rep. 262; *Wickersham* v. *Chicago Zinc Co.*, 26 Am. Rep. 784; *Inerarity* v. *Merchants Natl. Bank*, 52 Am. Rep. 710; *Merchants National Bank of Kansas City* v. *Lovitt*, 35 Am. St. Rep. 770; 5 Cyc. 461, par. C.; 2 Thompson on Corporations (2 Ed.), p. 750, section 1665.

We call the court's attention to the fact that the principle is now well established, that neither a suspicion of defect of title, knowledge of circumstances which would excite such suspicion in the mind of a prudent man or put him on inquiry, nor even gross negligence on the part of the taker will affect his right unless the circumstances or suspicions are so cogent and obvious, that to remain passive would amount to bad faith. In other words, the question is now one of good or bad faith, and not one of dili-

gence or negligence, except so far as the want of caution is material as bearing on the question of good faith, and suspicion, or knowledge of facts which fall short of bad faith do not amount to notice. See 7 Cyc. 944 (B), 945, 946.

Counsel for appellant bank cites case of *Robertshaw* v. *Britton,* 74 Miss. 873, as being in line with defendant's contention in the case now before the court. We fail to see how that case has any bearing upon the case at bar. The note in *Robertshaw* v. *Britton,* was made payable to order and, of course, was subject to defenses that could be set up under section 3503 of the Code of 1892. The notes involved in the suit now before the court are made payable to bearer. Of course, if the notes involved in the case now before the court were payable to order, then the defenses authorized by the statute might be set up, but we have no such case before this court.

The case of *Montjoy* v. *Bank,* 76 Miss. 402, and the case of *Deans* v. *Robertson,* 64 Miss. 195, cited by counsel for appellant, were with reference to notes and contracts made in violation of public policy, or of a positive rule of law, and are not like the case now before the court and have no application whatever to this case. It was no violation of the law for the cashier of the appellant bank to issue the notes in controversy, nor was it against any public policy or good morals.

The case of *Virden* v. *Murphy,* 78 Miss. 515, cited by counsel for appellant, was another one of those cases where the contract or note was issued in violation of a positive law, and is not like the case at bar.

. The case of *Simmons* v. *Atkinson,* 69 Miss. 862, cited by counsel for appellant, the note in that case had been changed and made to read different from what it originally read, and by reason of the change the court held that the maker thereof was not liable. The notes involved in the suit now before the court are not claimed by appellant to be forged, or to have been in any way

changed. In fact, the notes in controversy in the case now at bar are just as they came from the hands of the cashier of appellant bank. So the case of *Simmons* v. *Atkinson,* is not in any way applicable to the case at bar.

The notes in controversy being payable to bearer, the burden rested upon the appellant to show that the Bank of Winona were not *bona fide* holders of said notes for value without notice, and we respectfully submit that they have wholly failed in all the evidence that they introduced to meet the said legal requirements. The Bank of Winona is under the law *prima facie* holders of said notes for value without notice of any defenses that might have existed to said notes, and it was not incumbent upon the bank to show that it has no notice of any of the defenses set up by appellant, or that the bank acquired said notes for value. And so the court, under all the evidence that was produced on the trial of this case, rightly held that the Bank of Winona was entitled to recover upon the notes sued on, and we respectfully submit that the judgment which was entered below should be affirmed.

Argued orally by *Monroe McClurg* and *E. F. Noel* for appellant, and *W. T. Knox* and *W. S. Hill,* for appellee.

COOK, J., delivered the opinion of the court.

E. R. Blackston was engaged in the mercantile business, in the town of Winona, under the name of the Blackston Mercantile Company. The Blackston Mercantile Company was indebted to the Bank of Winona, of which bank E. R. Blackston was vice president. The record discloses that the Blackston Mercantile Company's overdraft with the Bank of Winona was very large, and Blackston was making every effort to secure this overdraft, so as to avert financial disaster. Blackston was also a stockholder of the Merchants' & Farmers' Bank, of Vaiden.

In May, 1910, Blackston casually approached the vice president of the Merchants' & Farmers' Bank, and told

him, if his bank needed any money, he could get the money for them. He was informed that the Merchants' & Farmers' Bank would probably need some money. Blackston asked the vice president to have his bank send him a statement, as he was going to St. Louis to borrow some money for the Bank of Winona, and would at the same time secure the money for the Merchants' & Farmers' Bank.

This conversation between Blackston and the vice president of the Merchants' & Farmers' Bank occurred in Winona. The next day after the interview Blackston went to Vaiden and repeated his offer to borrow money to the cashier of the Merchants' & Farmers' Bank, and was told that the bank would need from ten thousand to fifteen thousand dollars. A few days thereafter the bank received several letters from correspondent banks, stating that Mr. Blackston had informed them that the bank desired to borrow money, and offering to make the loans on paper signed by the officers of the bank, or indorsed by Blackston. Among the banks heard from was the Boatmen's Bank of St. Louis. About May 17, 1910, the Merchants' & Farmers' bank made a note to the Boatmen's Bank for ten thousand dollars, payable December 1, 1910, with Blackston as indorser, and got the money. About June 21, 1910, it made another note to the Boatmen's Bank indorsed by Blackston, for five thousand dollars, payable October 15, 1910, and secured this sum of money. Blackston then went to the cashier of the Merchants' & Farmers' Bank and told him that his lawyer had advised him that he ought to be secured by collaterals on his indorsements. The cashier refused to give him the security, because he was not authorized to do so. Blackston left the bank, and, coming back, falsely told the cashier that he had seen the president of the bank, and the president had authorized him to instruct the cashier to execute notes payable to bearer with collaterals attached, to secure Blackston's indorsements on the Boat-

men's Bank notes, which was done by the cashier, exe-
cuting two notes of the bank for four thousand five hun-
dred and three thousand five hundred dollars, respect-
ively, payable to E. R. Blackston, or bearer. It was un-
derstood and agreed that these notes would be held in
trust by Blackston to secure his indorsement and returned
to the bank when the bank paid the Boatmen's notes.
The notes were paid at maturity. In violation of this
trust, Blackston delivered the notes to the Bank of Win-
ona, either to secure his pre-existing indebtedness to that
bank, or as collateral security for advances to be made
by the bank to him. When these transactions between
Blackston and the Merchants' & Farmers' Bank took
place, subsequent developments show that Blackston was
on the ragged edge of financial despair, and the posses-
sion of collateral was a matter of dire necessity. On Oc-
tober 15, 1910, the date when the first note was due, the
Bank of Winona notified the Merchants' & Farmers'
Bank that it was the owner of the note, and demanded
payment. The Merchants' & Farmers' Bank refused to
pay both notes, because they were obtained by fraud, and
because they had paid the Boatmen's Bank notes when
due, and, having done so, the notes were without con-
sideration, and under the agreement they were to be re-
turned to defendant.

Suit was brought on the notes by the Bank of Winona.
At the trial the notes were introduced in evidence, their
execution proven, and the plaintiff rested. The Mer-
chants' & Farmers' Bank offered to make proof of the
facts above detailed. The evidence was heard by the
presiding judge, in the absence of the jury, and, after
hearing same, the record discloses that all of it was ex-
cluded from the consideration of the jury, and the jury
was peremptorily instructed to find for the plaintiff.

It is the contention of defendant below, appellant here,
that the evidence offered would authorize a jury to believe
that Blackston obtained the notes by fraud, and, this be-

ing true, the burden was then shifted to the plaintiff to prove that it was a *bona fide* purchaser for value, without notice of the fraud.

The Bank of Winona says the notes were made payable to bearer, and they have passed to us by delivery. The law will presume that we are *bona fide* purchasers for value. It is no concern of the bank that the notes were obtained by fraud and misrepresentation. We understand that the bank relies solely upon the production of the notes, payable to bearer, for a verdict, and assumes that the fraud of the person to whom the notes were delivered in no way casts any burden upon the bank to satisfy the jury that the bank is in fact a *bona fide* purchaser, without notice of the fraud. This is evidently the theory adopted by the trial court. This, we think, is a total misconception of the law of this state.

"The holder of negotiable paper is presumed to be a *bona fide* holder for valuable consideration until something be shown in disparagement of his title; and he is not bound to show that he has given value for the paper, or that he took it before maturity, until the adverse party has shown the want, or failure, or illegality of the consideration, or that it was lost or stolen from the rightful holder, or that the holder came to the possession of it fraudulently." *Emanuel & Barnett* v. *White*, 34 Miss. 56, 69 Am. Dec. 385.

In the present case the evidence tends to show that the holder came to the possession of the notes fraudulently, and also that the Bank of Winona took the notes under suspicious circumstances.

"There are two classes of suits at law so nearly analogous to suits by creditors to subject property fraudulently conveyed that it is difficult to draw a distinction between them sufficient to warrant the application of different rules of procedure. These are suits by one whose property has been secured by the fraud of the vendee, and who sues to recover it from another claiming under the

fraudulent vendee, and suits by an indorsee of a bill or note against the maker, who defends upon the ground that the instrument was secured by the fraud of the payee. In these cases it has been uniformly held that proof of the fraud of the vendee of the property, or payee of the note, imposes upon the party claiming under him the duty of showing that he is a purchaser for value, and in good faith. *Bailey* v. *Bidwell,* 13 Mees. & W. 73; *Fitch* v. *Jones,* 32 Eng. Law & Eq. 134; *Paton* v. *Coit,* 5 Mich. 505, 72 Am. Dec. 58; *Clark* v. *Pease,* 41 N. H. 414; Bigelow, Fraud, 132; *Spira* v. *Hornthall,* 77 Ala. 137; *Easter* v. *Allen,* 8 Allen (Mass.), 7; *Morgan* v. *Morse,* 13 Gray (Mass.), 150; *Haskins* v. *Warren,* 115 Mass. 514." *Richards* v. *Vaccaro,* 67 Miss. 516, 7 So. 506, 19 Am. St. Rep. 322.

It seems to be the view of appellee that the note being payable to bearer gives it some sanctity which exempts it from the burden imposed upon the holders of other kinds of property, when the facts are given in evidence showing that the holder of the property obtained it from a party who fraudulently came into possession thereof. The title to a note payable to bearer may be conveyed by a delivery of the note, and one in possession of such a paper is *prima facie* the owner of same—and *prima facie* the holder is an innocent purchaser for value—but, when circumstances in evidence show that the payee, from whom the holder claims, came into possession of the note by fraud upon the maker, then the holder must show his good faith.

We think the evidence offered by appellant might be so construed as to raise an inference that Blackston delivered these notes to the Bank of Winona as a security for pre-existing indebtedness. All of the facts given in evidence were pertinent to enable the jury in reaching a correct conclusion upon the issues presented by the pleadings.

Receiving property merely as security for a pre-existing debt does not constitute the holder a purchaser

for value, and, by reason of our noncommercial statute, the same rule applies to bills of exchange and notes taken as security for a debt. *First Nat. Bank* v. *Strauss,* 66 Miss. 479, 6 So. 232, 14 Am. St. Rep. 579.

The second special plea to the plaintiff's declaration sets up the defense that the notes in question were assigned to the Bank of Winona as security for a pre-existing indebtedness of Blackston to said bank. The Bank of Winona, replying to this plea, merely says that the notes were purchased by it in the usual course of business, and that it was a *bona fide* purchaser for value, without notice. The defendant, appellant here, made a motion to strike this replication from the files, because the same was not responsive to the plea, which motion was overruled. The plea sets up facts which, if true, would establish that the Bank of Winona was not a *bona fide* purchaser for value. The replication does not deny the facts, but simply pleads a conclusion of law. We think the motion to strike the replication from the files should have been sustained.

In conclusion, we are of opinion that the facts disclosed by the record and excluded from the jury puts the plaintiff to proof of its good faith, and it should be required to produce evidence to show that the Bank of Winona was a *bona fide* purchaser for value.

*Reversed and remanded.*