ADAIR v. BANK OF HICKORY FLAT.

[75 South. 758, Division B.]

1. BILLS AND NOTES. *Evidence. Collateral agreement.*

Where in a suit by a bank on a discounted note, the testimony showed that the note was charged back to the payee indorser, who accepted the note and thereafter was the real owner of it, testimony was admissible by the maker showing a collateral agreement with the payee which permitted cancellation of the note at its maturity, if the maker did not then care to pay for stock purchased therewith.

2. BILLS AND NOTES.   *Action by holder.   Question for jury.   Sufficiency of evidence.*

   Where in a suit by a bank on a discounted note which had been charged back to the payee endorser, there was evidence of a collateral agreement between the payee and maker, which allowed the cancellation of the note at its maturity, if the maker did not desire to carry out a purchase of bonds for which the note was given, a peremptory instruction for plaintiff was erroneous.

3. BILLS AND NOTES.   *Transfer.   Consideration.   Preexisting debt of indorser.*

   In such a suit it was competent to plead and to show by proof also that a material portion of the proceeds of the note were applied by the bank to ward liquidating a preexisting indebtedness.

4. BILLS AND NOTES.   *Bona-fide holder.   Retransfer to payee.*

   The payee of a note who has discounted it with a bank, cannot after repossessing it, thereafter rely on the *bona-fides* of the bank.

APPEAL from the circuit court of Sunflower county.

HON. E. F. EVERETT, Judge.

Suit by the Bank of Hickory Flat against W. T. Adair. From a judgment for plaintiff, defendant appeals.

The facts are fully state in the opinion of the court.

*Herring & Wiley* and *J. L. Williams,* for appellant.

In addition to the brief filed herein by our associate, we desire to urge upon the court that the case should be reversed because of two palpable errors on the part of the court, to wit:   First, In sustaining plaintffs demurrer to special plea No. 3; Second, In giving the peremptory instruction to find for plaintiff.

Special plea No. 3 sets up a perfect defense.   It is the law that one who takes a note merely as collateral security for a pre-existing debt is not an innocent purchaser for value.   In the case of *Bank of Meridian* v. *Strauss,* 66 Miss. 479, this court said: "In this state it is well settled that receiving property merely as security for a pre-existing debt does not constitute the holder a purchaser for value.   *Pack* v. *Harney,* 4 S. & M.

255; *Pope* v. *Pope,* 40 Miss. 517; *Perkins* v. *Swank,* 43 Miss. 349; *Hinds* v. *Pugh,* 48 Miss. 268; *Brooks* v. *Whitson,* 7 S. & M. 513.''

This seems to be the holding of the court of last resort in the states of Alabama, Iowa, Kentucky, Maine, Missouri, New Hampshire, New York, Ohio, Pennsylvania and Tennessee. See 3 Ruling Case Law, page 1059, and cases there cited. The *Strauss case, supra,* was decided in 1889, and is still the law of Mississippi, the doctrines therein announced having been re-announced in 1914 in the case of *Merchants & Farmers Bank* v. *Bank of Winona,* 64 So. 210. In that case this court said:

''When circumstances in evidence show that the payee, from whom the holder claims, came into possession of the note by fraud upon the maker, then the holder must show his good faith.''

There can be no doubt that the execution of the note sued on in this case was fraudulently procured. It is shown unquestionably that the officer of the mining company who took the note, gave appellant a solemn promise in writing to the effect that if at the maturity of the note he did not care to pay for same, for any reason, the note will be cancelled and returned to him.

The court said, in the case last cited: ''We think the evidence offered by appellant might be so construed as to raise an inference that Blackston delivered these notes to the bank of Winona as a security for pre-existing indebtedness.''

In the case at bar the defendant did not rely on inference, but it is proven as an absolute and uncontradicted fact that when the bank of Hickory Flat took the note sued on it was put up as collateral security for a pre-existing debt of six thousand dollars.

The court below seemed to be under the impression that because it could not be shown that the Bank of Hickory Flat took the note with knowledge of the maker's defenses, then Baird and Warmack could rely on the good

faith of the bank, but, under the testimony of Marion Allen, the Treasurer of the Memphis Mining & Manufacturing Company, Transcript page 66, which testimony is not contradicted, it would have been impossible for Baird and Warmack to have acquired the note from the Bank of Hickory Flat, because his testimony shows that the said note was turned back to the said Memphis Mining & Manufacturing Company by the Bank of Hickory Flat after this suit was filed.

Having come back into the hands of the payee the *bona fides* of the Bank of Hickory Flat has nothing to do with the case. *Andrews* v. *Robinson,* 101 Wisconsin 334, 87 N. W. 190, 87 A. S. R. 87.

"The general rule that if a person, with knowledge of facts, which will defeat a promissory note in the hands of the payee, purchases it from a *bona-fide* holder thereof, he may recover thereon upon the strength of such *bona fides,* does not apply to a purchaser who is the payee of the note. If he sells such paper to an innocent third person, and repurchases it for value, he does not thereby become possessed of any better right as against the maker than he is possessed in the first instance. Otherwise a person might become possessed of the promissory note of another by the grossest of fraud and by selling it to an innocent third person for value and subsequently repurchasing it, enforce the same against the maker. The law contains no such open door as that for the successful perpetration of fraud." 3 Ruling Case Law, page 1037, and cases there cited.

*H. C. Mounger,* for appellant.

The rule is uncontroverted that the payee of a note which has been procured by fraud or to which there in a defense as between the original parties, either based upon fraud or illegality of consideration, cannot after transfer of the note to an innocent purchaser, for value,

repurchase the note and enforce it, against the maker, stripped of the defenses originally existing as between the maker and the payee. It is held that the defense of the maker cannot be cut off by passing the note through the hands of an innocent third person, although in a suit by the latter, upon the note the defense would not be available. 3 Am. and Eng. Ann. Cases, p. 626, note. We call the courts attention to the principal case of *Aragon Coffee Co.* v. *Rogers,* 8 Miss. 823, where the principal is laid down and the court said the case should have gone to the jury. See this note in full, with authorities. See note to 54 L. R. A., p. 673, where it is said: ''The exception mentioned is that if the note was invalid as between the maker and payee, the payee could not himself, by purchase from a *bona-fide* holder, become a successor to his rights, it not being essential to such *bona-fide* holders protection to extend the principal so far. ''See also the principal case, *Andrews* v. *Robertson, ibid;* 4 Am. and Eng. Ency. of Law (2 Ed.), 309, 87 Am. St. Rep. 870.

The fourth assignment of error is, ''because the court erred in sustaining the objection to the questions of the defendant. At that time, at the time this note was taken, by the Bank of Hickory Flat, was the Memphis Mining and Manufacturing Company indebted to the Bank of Hickory Flat, and if so to what extent? and of what did said indebtedness consist?'

This was in the deposition of Marion Allen, the treasurer of said company, the one who sold the stock to Adair, and who negotiated his note to the Bank of Hickory Flat. He was also secretary of the Mining Company. The objection was that the books were the best evidence. There was nothing in the objection. It was as to the existence of a fact, and if the witness knew it, he did not have to have the books before him, or introduce the books. He of all men should have known and it appears that he did know. It was important as to the transfer of the note. If the note was taken as collateral

security for a preexistent debt, the bank was not an innocent purchaser.

Receiving property merely as security for a pre-existing debt does not constitute the holder a purchaser for value and by reason of our non-commercial statute, value applies to bills of exchange and notes taken as security for a debt.'' *Merchants and Farmers Bank* v. *Bank of Winona,* 64 So. 210, 212, at bottom, Opinion by COOK, J.; *First Nat. Bank* v. *Strauss,* 66 Miss. 479, 6 So. 232, 14 Am. St. Rep. 579; *Allen* v. *Bratton,* 47 Miss. 119; B. & A. Dig., p. 94.

The sixth assignment and the most important and the one which covers a multitude of sins, is ''Because the court erred in ruling out all the evidence of the defendant, and in giving a peremptory instruction to the jury to find for the plaintiff.''

The case should have gone to the jury. The evidence clearly shows that the whole thing was a fraud. The very fact that the treasurer in taking the note, gave Adair an agreement giving him the option to decline to pay it, shows that it was a fraudulent transaction. He was right then and there laying a trap for Adair. His idea was to induce him to sign the note by this trick, and then put it into the hands of an innocent purchaser and collect. The treasurer never intended to keep this agreement from the first. The evidence also shows that Adair gave the sixty days' notice; that he never got any stock or bonds or anything else for the note. There was evidence to go to the jury to show that the bank had had notice. *Merchants and Farmers Bank of Winona,* 64 So. 211-21; *McCarty* v. *Kapreta,* Ann. Cases, 1915A., 834; *Morris* v. *Ga. Loan Savings and Banking Company,* 54 L. R. A. 507.

''Notice to an officer or agent of a corporation is, generally speaking, notice to the corporation. This is in accordance with the general doctrine of the law of agency, the rules applicable to the case of individuals and to that of corporations being the same. Am. & Eng. Ency. of Law.

There was evidence enough to go to the jury on the question of notice. 3 Ruling Case Law, Bills and Notes, sec. 244; *Canajoharie Nat. Bank* v. *Diefendors,* 10 L. R. A. 676. It is the same with any other defense, illegality of consideration or want of consideration.

"*Prima facie* the holder is an innocent purchaser for value, but when the circumstances in evidence show that the payee from whom the holder claims, came into possession of the note by fraud upon the maker, then the holder must show his good faith. *Merchants and Farmers Bank* v. *Bank of Winona,* 64 So. 212. The case of *Emanual* v. *White,* 34 Miss. 56, 63, recognizes the doctrine that when the defendant has shown the want, or failure or illegality of consideration, or that it was lost or stolen from the rightful owner, or that the holder came to the possession of it fraudulently, that the burden of proof then shifts to the plaintiff. 4 Am. & Eng. Ency. of Law, 321." A peremptory instruction is proper only where all the facts in evidence taken as true, with every just inference from them, fail to maintain the issue. 4 B. & M. Dig. p. 32; *Whitney* v. *Cook,* 53 Miss. 551; *Farmer* v. *Cumberland Tel. Co.,* 86 Miss. 55, 38 So. 775.

"Peremptory instruction will be error unless the evidence, conceding it to be absolutely true, discloses no legal right in the party against whom it is given." *Fore* v. *Alabama & C. Ry.,* 87 Miss. 211, 39 So. 493, 690, same Dig. and page. Indeed the rule is so well settled that citations of authority are needless.

It follows then that the verdict of the jury was contrary to the law and the evidence, and that the court erred in overruling the motion for a new trial.

*Barbour & Henry,* for appellant.

The position of astute counsel for appellee, that the burden of proof to show that the bank was not a holder for value, and was not a holder in good faith, was assumed by the appellant, is nothing short of preposterous.

The record did not even tend to show affirmatively that the bank did not have notice of the agreement or the defense set up. It is, therefore, perfectly apparent that the court held the burden of negativing good faith and value paid was on the defendant; and this was error, because: "In these cases, it has been uniformly held that proof of the fraud of the payee of the note, imposes upon the party claiming under him, the duty of showing that he is a purchaser for value. and in good faith." *Bank* v. *Bank,* 106 Miss. 487; *Kendrick* v. *Kyle,* 78 Miss. 278; *Levens* v. *Smith,* 102 Ga. 480.

That the bank did not surrender the note is of no moment, as counsel seem to think. It even took a subsequent pledge of it. The counsel say that, "thereafter, the Mining Company was largely indebted to the Bank of Hickory Flat, which indebtedness included three thousand dollars realized on defendants note;" but there is no evidence to this effect. The evidence shows, on the contrary, that at least one thousand dollars of the proceeds of the note was applied to indebtedness incurred before the note was charged, and we submit this is shown affirmatively against a credit balance of the Mining Company with the Bank. The counsel say, too, that when the note was pledged, it "was already held by the Bank." "Already held," how? The evidence discloses, we submit, as the property of the mining company, and not as a pledgee of it. 30 Cyc., 1190, under the title "payment."

Third. The next proposition we insist upon is that, the Bank of Hickory Flat is a holder for value, only to the extent of two thousand dollars and the usees, having obtained the transfer of the note after its maturity, are limited exactly to the right of that bank. This position grants that the bank had no notice of the agreement with appellant, and that whether the usees had such notice is wholly immaterial, and that their interest in the mining company is immaterial. *Bank* v. *Mfg. Co.,* 2 C. C. A. 637; *Richards* v. *Monroe,* 85 Ia. 359; *Voss* v. *Chamberlain,* 139

Ia. 569; *Allaire* v. *Hartshorne,* 21 N. J. L. 665; *Holcomb* v. *Wycoff,* 35 N. J. L. 35; *Stalker* v. *McDonald,* 6 Hill (N. Y.) 93; *Kitchen* v. *Londenback,* 48 Ohio St. 177; *Oppenheimer* v. *Bank,* 97 Tenn. 19; *Goff* v. *Miller,* 41 W. Va. 683; *Petty* v. *Hammun,* 2 Humph. 102.

Another view of this transaction and that one taken by counsel for appellee, necessitates a reversal, or a *remittitur* of all over two thousand dollars and interest. The counsel very correctly claim by their brief that, coupled with the conditional purchase of this stock, there was an agreement that the paper should be used by the mining company and that this feature made it accommodation paper. Granted, the amount of recovery on accomodation paper is the amount for which the holder can claim as a purchaser for value, and especially in the case of a pledgee. *Cook* v. *Clark,* 4 E. D. Smith (N. Y.) 213; *Holeman* v. *Hobson,* 8 Humph. (Tenn.) 127; *Holcomb* v. *Wycroff,* 35 N. J. L. 35; *Nickerson* v. *Reeger,* 76 N. Y. 284; *Beckhans* v. *Bank,* 12 Atl. (Pa.) 72; *Huff* v. *Wagner,* 63 Barb. (N. Y.) 215.

Indeed, it is well settled that the pledgee of accomodation paper can, in no case, recover more than the debt for which he holds the same as collateral. *Jones* v. *Hibbert,* 3 Eng. Com. Law, 419; *Hatcher* v. *Bank,* 79 Ga. 547; *Bank* v. *Werst,* 52 Ia. 684; *Matthews* v. *Rutherford,* 7 La. Ann. 225; *Bank* v. *Payne,* 18 La. Ann. 222; *Stoddard* v. *Kimbell,* 6 Cush. (Mass.) 469; *Bank* v. *Chopin,* 8 Met. (Mass.) 40; *Fisher* v. *Fisher,* 98 Mass. 303; *Allaire* v. *Hartshorne,* 21 N. J. L. 665; *Duncan* v. *Gilbert,* 29 N. J. L. 521; *Williams* v. *Smith,* 2 Hill (N. Y.) 301; *Bank* v. *Butterworth,* 45 Barb. 475; *Brown* v. *Mott,* 7 Johns. 361; *Handy* v. *Sibley,* 46 O. State 9; *Bank* v. *Doyle,* 9 R. I. 76; *Cromwell* v. *County,* 96 U. S. 60; *Valette* v. *Mason,* 1 Ind. 288; *Loy* v. *Wisman,* 36 Ia. 305; *Bange* v. *Flint,* 25 Wis. 544.

Still another view based upon this correct notion of counsel that this is accommodation paper; it is absolutely settled, contrary to the English rule and called the United

States rule that the holder of such paper acquiring it
after maturity, either as a purchaser straight out or as a
pledgee, cannot recover one cent on it; this note was
pledged after its maturity; the usees step into the shoes
of the Bank of Hickory Flat; it matters not whether the
pledge was made for a pre-existing indebtedness, in whole
or in part, or for a wholly then present consideration, the
maker cannot be made to pay. *Glass* v. *Smith,* 25 Ala.
474; *Battle* v. *Weems,* 44 Ala. 105; *Whitwell* v. *Crehore,*
8 La. 540; *Kellogg* v. *Barton,* 12 Allan (Mass.) 527; *Ches-*
*ter* v. *Dow,* 41 N Y. 279; *Grant* v. *Ellicott,* 7 Wend. 227;
*Corbitt* v. *Miller,* 43 Barb. 305; *Bower* v. *Hastings,* 36
Pa. St. 285; *Hoffman* v. *Foster,* 43 Pa. St. 137; *Long* v.
*Rhawn,* 75 Pa. St. 128; *Bacon* v. *Harris,* 15 R. I. 599;
*Cottrell* v. *Watkins,* 89 Va. 801.

For the purpose of this argument we will treat this as
accommodation paper, as in fact it was, and as conceded
by opposing counsel. What is the legal *status* of such
paper? It is uniformly held that as between the accom-
modation party (Adair here) and the party accommo-
dated (The Mining Co.), the former (Adair) is in effect
a surety. It follows from this, and is expressly so held
by the authorities, that such paper is revocable by the
accommodation party until it has actually passed out of
the hand of the party accommodated, and into the hands
of a third party for value. Therefore so long as the note
was in the hands of the mining company, it was revoca-
ble by Adair, and imposed no liability or obligation upon
him. It was no more than a piece of blank paper. 7 Cyc.
725 and 726; *St. Paul Bank* v. *Howe* (Minn.), 12 Am. St.
744; *Macey* v. *Kendal,* 33 Mo. 164; *Skilding* v. *Warren*
(N. Y.), 15 Johns. 270; *Berkley* v. *Tinsley* (Va.), 14 S. E.
842; *Gillespie* v. *Oil Mill,* 76 Miss. 406; *Moore & Tobb* v.
*Bank,* 101 Miss. 868.

We therefore respectfully submit that the note here
sued on when the plaintiff bank acquired rights under it
was no longer a negotiable instrument, and under the

facts as shown, the jury should have been permitted to say whether there was fraud in its procurement. Instead a peremptory instruction was given for the plaintiff bank.

We go further and say that, had there been no question of accommodation paper, the parties had by the special indorsement, and method of transfer changed entirely the character of paper from a negotiable to a nonnegotiable one.   Under the authority of Mr. Daniel's text, having changed its character, they are bound by the effect following such change.   The facts of the fraudulent scheme here practiced and that shown in the Moore & Tabb case are singularly alike.   Fortunately for Adair, as Judge COOK said of Moore & Tabb, the parties changed the character of the instrument sued on and Justice will yet be done.

*C. C. Moodey,* for appellee.

The only error assigned that is worthy of consideration is the action of the court below in giving the peremptory instruction for the plaintiff.

It is not claimed, nor is there a scintilla of evidence tending to show that the Bank of Hickory Flat had any notice whatever of the defense relied on.   An effort is made, or rather it is argued that, on the facts that plaintiff is charged with constructive notice of the defense set up.

The next contention as to notice, is that at the time Baird and the Warmacks purchased the notes sued on from the Bank of Hickory Flat, they were stockholders and officers of the mining company itself which had purchased such note from the bank of Hickory Flat.   This is certainly absurd, when it is considered that in this transaction neither Baird nor the Warmacks acted for the mining company in any manner whatever, but, to the contrary, acted for themselves.

It is claimed, though it is not true—that at the time they purchased this note from the bank they had notice of Adairs defense but, even if this had been true, they would have had the right to avail themselves of all the rights which the Bank of Hickory Flat could have asserted as against Adair.  7 Cyc., page 938.

It is next contended that the Bank of Hickory Flat acquired the note sued on as collateral security for a pre-existing indebtedness due to it by the Memphis Mining & Manufacturing Company, the payee' named in said note.  This is note true.  To the contrary, the evidence clearly establishes that the Bank of Hickory Flat accepted the note sued on, not to secure a pre-existing indebtedness due it by the Memphis Mining & Manufacturing Company, but to secure the sum of two thousand dollars, which was advanced the mining company at the time the note sued on was accepted, and one thousand dollars placed to the credit of said company, in payment of an overdraft to that extent, at that time due.

"Where a note is taken as collateral security for a debt at that time created and on the faith thereof, there is little or no dissent from the proposition that the consideration is sufficient and the indorsee a purchaser for value, and in due course of business.  7 Cyc., pages 929, 930, and cases cited.

Therefore, I contend that even if it be true, as a general proposition it no doubt is, that where one holds a note to secure a pre-existing indebtedness, such holder is not a purchaser for value, yet that principle of law has no application to the facts of this case, for the reason that the evidence clearly shows that the bank acquired title to the note to secure an indebtedness created at the time.

Both Adair and the bank state that the note sued on was executed for the purpose of enabling the mining company, the payee, to use it as collateral security (as stated by Adair), or for the purpose of getting money on it, or using it in any manner whatever, as stated by Allen.

Therefore, the most that can be said for this note is that it is accommodation paper, executed by the appellant for the express purpose of enabling the mining company to use it as collateral security.

"In the greater number of jurisdictions a party who received a promissory note merely as collateral security for a preexisting debt, is held to take the same in the usual course of business, and is considered a holder for value. In a considerable number of other jurisdictions, however, the courts have taken the opposite view and have held such a taking to be neither in due course nor for value. 7 Cyc., pages 932, 936, and numerous cases cited.

The idea that the appellant was induced to execute the note sued on through the fraud of the Memphis Mining & Manufacturing Company, or any of its agents, is wholly unsupported by the testimony. In fact the testimony clearly shows that he knew exactly what he was doing when he executed this note. He had already purchased two of the bonds of one hundred dollars each, and capital stock to the amount of two hundred dollars for which he had paid in cash two thousand dollars. Then, as he stated, to get an option on three thousand dollars of the bonds, and three thousand seven hundred and fifty dollars of the capital stock, he executed the note sued on, knowing, according to his testimony, that it would be used as collateral security, and, according to Allen's testimony for the purpose of getting money on it, or in any other way that said company saw fit. The note was used by the mining company to get money, the money being obtained from the Bank of Hickory Flat, and now the appellant wants to avoid the payment of the note by taking the position that it was executed for the purpose of securing a preexisting indebtedness due by the mining company, to the bank. Such a defense is not made out by the evidence, and I submit, it would be a rank injustice for judgment to be entered in

favor of the appellant under the circumstances disclosed by the evidence in this case.

Therefore, I submit, that the judgment from which this appeal is prosecuted should be affirmed.

STEVENS, J., delivered the opinion of the court.

This action was instituted by the appellee, Bank of Hickory Flat, against the appellant to recover upon a note for three thouasnd dollars executed by W. T. Adair in favor of the Memphis Mining & Manufacturing Company, or bearer. It appears that the note was given as the consideration for the purchase of three thousand dollars of the bonds and three thousand seven hundred and fifty dollars of the capital stock of the Memphis Mining & Manufacturing Company. The sale to Adair was negotiated by Marion Allen, treasurer of the mining company, and at the time the note was executed, and as a part of the same transaction, the following written agreement in the form of a letter was addressed to and delivered to the appellants:

"Doddsville, Miss., Dec. 13, 1913. Mr. W. T. Adair, City—Dear Sir: We accept your ninety day three thousand dollar note in payment of capital stock of this company, with the agreement that if at the maturity of the said note you do not care to pay for same, for any reason, we will cancel same and return to you. Yours truly, Memphis Mining & Mfg. Co., by Marion Allen, Treas. Witness: W. H. Airington.''

In pursuance of the so-called option evidenced by this letter, Mr. Adair advised the Memphis Mining & Manufacturing Company at the maturity of the note that he did not care to pay the note and accept the bonds and stock. It appears, however, that the payee of the note transferred and assigned the same to the Bank of Hickory Flat, which filed suit upon the note. To the declaration the defendant filed seventeen special pleas, eleven

of which seem to have been successfully demurred to, and the case proceeded to trial on the declaration and five special pleas.  On the trial of the case the plaintiff introduced the promissory note, and when it did so counsel for the defendant claimed the right to open and close the case. Thereupon the defendant introduced testimony in reference to the execution and delivery of the note, the understanding between the maker and the payee, and in reference to who was the real owner of the note at the time the suit was tried in the circuit court. The defendant introduced the deposition of Marion Allen as a witness for the defense, and Mr. Adair testified in his own behalf. When the defendant, who had been granted the right to open and close, rested, the plaintiff thereupon moved to exclude the defendant's testimony and to grant plaintiff a peremptory instruction.  The motion was sustained, and this action of the court is assigned for error.  Complaint is also made at the action of the court in sustaining certain demurrers to special pleas.  There is a wealth of pleading. We refrain from setting out herein the many special pleas, some of which were held insufficient on demurrer.  These pleas, among other things, charge fraud in the procurement of the note, charge that the bonds and stock of the Memphis Mining & Manufacturing Company were practically worthless, charge that the Bank of Hickory Flat was not a *bona-fide* purchaser for value of the note, but that the note was assigned to the bank for the purpose of cutting off the defenses and equities of the maker, and special plea No. 1 especially relied on the written agreement, by the terms of which Mr. Adair was privileged to decline the stock and have his note canceled. Marion Allen, the ''promoter'' who made the contract with Mr. Adair, testified that he was secretary and treasurer of the Memphis Mining & Manufacturing Company; that he represented his company in the negotiations with Mr. Adair, admitted the execution of the collateral agreement herein above copied, stated that the

note "was given primarily by Adair, who was already a bondholder and stockholder of said company to tide said company over a period of financial stringency;" that "soon after the maturity of the note, when payment of same was refused by Adair, the Bank of Hickory Flat was credited on the books of the mining company with three thousand dollars, the amount of the Adair note, to offset a corresponding debit of the Bank of Hickory Flat;" that when Adair refused to pay the note there was a new agreement between the Memphis Mining & Manufacturing Company and the bank whereby the mining company "executed a note in favor of the bank, for six thousand odd dollars, covering its entire indebtedness at that time, and collateraled the said six thousand odd dollar note by certain bonds of the company, and also by certain other notes made payable to the company, including the W. T. Adair note for three thousand dollars;" that at the time the note was first assigned to the bank the mining company "was indebted to the Bank of Hickory Flat in the sum of several thousand dollars evidenced by overdraft;" that witness sent the note to the bank "after a telephone conversation" between the cashier and the witness in which it was agreed that the bank was to use its best efforts in discounting the note and passing the proceeds to the credit of the Memphis Mining & Manufacturing Company, "it being understood at the time that the Memphis Mining & Manufacturing Company would be allowed to check only two thousand dollars of such proceeds, the balance to be applied as a credit against the then existing indebtedness of the mining company to the bank." When Mr. Adair attempted to testify in his own behalf, there was objection to any statements as to what transpired between him and Mr. Allen in reference to the execution of the note "until they first show that the Bank of Hickory Flat was not a *bona-fide* purchaser for value," and the court on this objection excluded some of the testimony of the defendant, and excluded, among other

things, any consideration of the written agreement relied on. The objections interposed by counsel for the plaintiff appear to have been based upon the assumption that the burden of proof rested all the while upon the defendant to negative the *bona fides* of the bank and to show affirmatively that the bank did not part with valuable consideration. The record further shows that pending the litigation Messrs. Baird & Warmack were substituted as plaintiffs in the case, and the suit proceeded for their use and benefit. Mr. Allen in his testimony states that Baird & Warmack "are large stockholders and bondholders" in the Memphis Mining & Manufacturing Company, and that both have been at different times directors and officers.

The learned circuit court was in error in excluding the defendant's testimony and in granting the peremptory instruction in favor of the plaintiff. The declaration charges that the plaintiff bank "is the holder, owner, and assignee by indorsement in writing of said note for valuable consideration before maturity, and without notice of any defect, offsets, or defenses." The testimony shows that the bank was really satisfied, and the note was charged back to the Memphis Mining & Manufacturing Company. The latter company accepted the six thousand dollar note with bonds and other collateral attached, and embraced in this note was the amount advanced by the bank in first discounting the note sued on. There was, according to the proof, a novation as to this indebtedness, and thereafter the Memphis Mining & Manufacturing Company was the real owner of the Adair note. It is true that, according to the testimony, the Adair note was attached to the six thousand dollar note as collateral security, but the plaintiff does not here sue as pledgee of a collateral note, but relies upon the prior discount of the note. It is unnecessary to speculate upon the rights of the bank as a pledgee of a collateral note deposited after its maturity and after Mr. Adair had given notice of his refusal to pay the same. Under the state of this record the defendant had the right

to rely upon the written collateral agreement and any other legitimate defenses. It is true there is practically nothing, in the testimony to show that the Memphis Mining & Manufacturing Company was insolvent or that its bonds and stock were worthless. As against the payee, however, the defendant had a right to rely upon his contract.

It was competent to plead and to show by the proof also that a material portion of the proceeds of the note were applied by the Bank of Hickory Flat toward liquidating a pre-existing indebtedness. *Merchants' and Farmers' Bank* v. *Bank of Winona,* 106 Miss. 471, 64 So. 210. There is no proof whatever that the bank was in fact an innocent purchaser for value, and there is no proof just how Baird & Warmack came to be the owners of the note sued on. There was an effort in this case to show that Baird & Warmack had purchased the property and effects of the Memphis Mining & Manufacturing Company after the maturity of the note and after the note had been charged back to the mining company.

It was certainly not competent for the Memphis Mining & Manufacturing Company, payee, to repossess the note from the bank, and thereafter to rely upon the *bona fides* of the Bank of Hickory Flat. Inasmuch as the cause must be reversed, and remanded for a new trial, it will profit little to discuss separately the various special pleas or the propriety of the several demurrers thereto.

*Reversed and remanded.*