## Mississippi Valley Trust Co. *v.* Brewer *et al.*[*]

(Division A.   June 11, 1928.)

[117 So. 540.   No. 27192.]

---

[*]Corpus Juris-Cyc. References: Bills and Notes, 8CJ, p. 984, n. 60; Injunctions, 32CJ, p. 155, n. 45; p. 426, n. 44; Pleading, 31Cyc, p. 208, n. 80.

*Shands, Elmore & Causey* and *Maynard, Fitzgerald & Venable,* for appellant.

172

173

*Wilson, Gates & Armstrong,* for appellee.

Argued orally by *H. F. Causey* and *Gerald Fitzgerald,* for appellant, and *Julian C. Wilson,* for appellee.

Cook, J. The appellant, the Mississippi Valley Trust Company, filed its bill of complaint in the chancery court

of Coahoma county against Earl Brewer, Mrs. Earl Brewer, Mrs. Earline Brewer Shelton, Mrs. W. P. Holland, J. W. Cutrer, Mrs. J. W. Cutrer, and the Bank of Clarksdale, seeking to set aside alleged fraudulent conveyances therein particularly set forth, and to enjoin the Bank of Clarksdale from paying out and distributing to the defendants funds and property of certain of the defendants then in its possession. A temporary injunction was issued as prayed for, and thereafter, on motion of the Bank of Clarksdale, which was heard on the pleadings and process, the court so construed and modified the writ of injunction as to permit the Bank of Clarksdale to pay eighteen thousand one hundred fifty-three dollars and forty cents of said funds to the Planters' National Bank, which was alleged to be the owner, holder, and indorsee of a certain cashier's check for said sum, issued by the said Bank of Clarksdale to J. W. Cutrer as attorney for certain of the defendants. From the decree so construing and modifying the injunction, this appeal was prosecuted.

The original bill of complaint alleged, in substance, that the defendants Earl Brewer and J. W. Cutrer, jointly and severally, were indebted to the appellant in the sum of three hundred thirty-eight thousand seven hundred forty-five dollars and seventy-five cents, and set forth in great detail the transactions and dealings between these parties by which this indebtedness was incurred; that, in contemplation of their liability to the appellant for this sum, the defendants Earl Brewer and J. W. Cutrer, from time to time, fraudulently conveyed to others all of the property which either of them possessed in an effort to defeat the appellant and others out of the amounts so due them, so that the said Brewer and Cutrer were then wholly insolvent; that the said Earl Brewer made a conveyance to Mrs. Earl Brewer, Mrs. Earline Brewer Shelton, and J. W. Cutrer and E. W. Smith, as attorneys of all of his property, the said con-

veyances being particularly set forth and described, and being alleged to have been made without consideration, and to be fraudulent and void, and made for the express purpose of defrauding the appellant and other creditors; that the said J. W. Cutrer, being insolvent, and in an effort to place his property beyond the reach of his creditors, fraudulently, and without consideration, trans- ·ferred to his wife, Mrs. B. C. .Cutrer, large holdings of valuable property therein particularly described; that, in furtherance of the alleged fraudulent schemes of the said Earl Brewer and J. W. Cutrer, the said Mrs. Earline Brewer Shelton executed certain alleged fraudulent transfers and assignments of property to Mrs. Florence T. Holland; the many alleged fraudulent transfers and assignments between these several parties being set forth and described in detail and at great length.

The bill of complaint also alleged that, after Earl Brewer had made the alleged fraudulent conveyances to his daughter, Mrs. Earline Brewer Shelton, and to his attorneys, Cutrer & Smith, the Canal Bank & Trust Company of New Orleans, and other creditors, filed a cred- itor's bill in the chancery court of Coahoma county, at- tacking both conveyances as being fraudulent and void; that, after taking proof therein, a compromise and adjustment was reached by some of the creditors there- in, to-wit, the Canal Bank & Trust Company and several others unknown to the appellant, whereby the Canal Bank & Trust Company paid a large sum of money, or gave a division of the property alleged to have been fraud- ulently transferred; that the appellant had intervened in said suit, but, because of the fact that creditors first filing their bill to set aside the fraudulent conveyances have the first lien on the property, the appellant was compelled to withdraw its intervention therein, and to take a nonsuit without prejudice to its right to file another suit against the defendants Earl Brewer and J. W. Cutrer.

It was further alleged that the said compromise agreement between the Canal Bank & Trust Company and the said Brewer and Cutrer was also fraudulent, and made in an effort to further hinder and delay their creditors; that by said agreement it was provided that all or some of said property and the conveyances thereof should be lodged with the Bank of Clarksdale, to be by it distributed; that the said Bank of Clarksdale then held and had in its possession for the defendants, or some of them, certain moneys, notes, collateral, deeds, transfers, and assignments, which, unless it was restrained by injunction, it would deliver to the defendants, or some or all of them, and which would be by the defendants transferred or assigned to other persons; that the interested defendants were all insolvent, and by said transfers the appellant would lose all chance of recovering any part of the same, as it would be dissipated and disposed of, or placed beyond the reach of the appellant or any other creditors of the interested defendants.

The bill prayed for a personal judgment against Earl Brewer and J. W. Cutrer; that these various alleged fraudulent conveyances, transfers, and assignments be set aside and canceled, and that the property thereby conveyed be subjected to the payment of said indebtedness of Brewer and Cutrer to the appellant; and also that the Bank of Clarksdale, or any other person interested, be enjoined and restrained from distributing or paying out any money, collateral, notes, or deeds to the defendants, or any of them, until the further order of the court.

The preliminary injunction prayed for was issued and served on the Bank of Clarksdale, enjoining and restraining it from distributing and paying out to Earl Brewer, Mrs. Earline Brewer Shelton, Mrs. W. P. Holland, J. W. Cutrer, or Mrs. J. W. Cutrer, or to any or either of them, any money, collateral, notes, securities, deeds, or deeds of trust, paid or delivered to it, or held by it pursuant to a contract of settlement dated on or about December 14,

1927, made between complainant and the defendants, or some of them, in the case of *Canal Bank & Trust Company* v. *Earl Brewer*, No. 3851, in the chancery court of the Second judicial district of Coahoma county. But this writ did not in express terms include the assignees or indorsees of the defendants.

The Bank of Clarksdale filed an answer to the bill of complaint in which it specifically disclaimed any information as to, or interest in, the various allegations of the bill against the other defendants, and asserted that it was only concerned with the injunction issued and served against it restraining it from distributing or paying out to any of the parties named any money, collateral, notes, securities, deeds, or deeds of trust paid or delivered to it, or held by it, pursuant to the contract of settlement referred to in the bill. As to these matters, the answer averred that, at the time of the service of the writ of injunction, it had no money, notes, securities, or property which had been paid or delivered to it in pursuance of said agreement, but that it had made full distribution thereof, and paid over and delivered the same to the proper parties, except the sum of eighteen thousand one hundred fifty-three dollars and forty cents.

As to this sum, it was alleged that, in the distribution and delivery of all said properties, it executed and delivered as a part thereof to J. W. Cutrer, attorney for the defendants, its cashier's check on itself for eighteen thousand one hundred fifty-three dollars and forty cents; that said cashier's check was issued and delivered to the said J. W. Cutrer before the writ of injunction was served on it, and before it had any knowledge or information thereof; that, by delivering said check, it obligated itself to pay J. W. Cutrer, attorney for the defendants, or to his assignees or indorsees, upon proper indorsement, said sum of money; and that it stood ready, willing, and desirous so to do. It was further averred that, before said cashier's check was presented to it for

payment, the writ of injunction was served upon it, and thereafter the Planters' National Bank presented said check to it as indorsee, holder, and owner thereof, and demanded payment thereof; that, owing to the injunction served on it, it declined to make said payment, and thereupon said cashier's check was protested for nonpayment and dishonor; that thereafter the Planters' National Bank brought suit in the circuit court against the said Bank of Clarksdale for the said sum of eighteen thousand one hundred fifty-three dollars and forty cents and interest, and that the said Bank of Clarksdale is only failing and refusing to pay said sum on account of the possibility of violating the said injunction; that the said defendant Bank of Clarksdale is willing and anxious to pay the said check and honor its obligation, and finds it very embarrassing to refuse to pay its cashier's check and to have the same dishonored and protested, and to be sued for its acknowledged obligation; that the circuit court in which the suit was pending would soon convene, at which time the suit would be triable; that it could not deny that it owed the obligation; that it was anxious that it be permitted to honor and pay the said check, and for the suit against it to be dismissed, but that it was afraid to do so without the permission of the court. It asked that the injunction against it be dissolved or modified so as to permit it to pay and honor its cashier's check to the Planters' National Bank, and relieve itself of the suit against it.

Upon the filing of its answer, the Bank of Clarksdale filed a motion to dissolve the injunction against it, and to specially dissolve it so as to permit it to pay and honor the cashier's check issued to J. W. Cutrer, attorney, then held and sued on by the Planters' National Bank; and that the court dissolve the said injunction so as to relieve it in all respects from refraining from honoring its said cashier's check to the holder or holders and the indorsee or indorsees thereof; said motion being made

upon bill of complaint, the *fiat,* and writ therein, and the answer of the defendant the Bank of Clarksdale.

Thereafter, and before the hearing of this motion to dissolve or modify the injunction, the appellant filed an amended and supplemental bill of complaint in which, among other things, it was alleged that, a few minutes before the president of the Bank of Clarksdale was personally notified of the issuance of the writ of injunction, all of the said bonds, money, property, and papers had been transferred out of its possession and the possession of the said president of the bank, except the sum of eighteen thousand one hundred fifty-three dollars and forty cents, for which the cashier's check was issued to J. W. Cutrer, as attorney for the defendant; that, at the time of the issuance of the injunction, the said cashier's check was in the hands of the said J. W. Cutrer, attorney for the defendants; that, at the time J. W. Cutrer received notice of the injunction and the filing of the original suit, the said cashier's check was in his hands unindorsed; that, in order to circumvent the order of the court and the injunction which had already issued, the said J. W. Cutrer indorsed said check, "J. W. Cutrer, attorney for the defendants," and delivered the same to his law partner, E. W. Smith; that, through error, oversight, or mistake in drawing the original bill, the name of E. W. Smith was left out in praying for process and summons, but that the original bill throughout named E. W. Smith as a party, and a necessary party, to the said bill of complaint; that, in addition, interrogatories propounded to the said E. W. Smith were attached to the original bill, and he well knew that he was a proper and necessary party to said bill; that if, by any chance, he discovered that an error had been made in the original bill as filed, he knew as an attorney at law, and as an individual, that the same was an error and mistake, and that he was, in truth and in fact, a necessary party thereto; that the said E. W. Smith,

as the partner of the said J. W. Cutrer and a member of the firm of Cutrer & Smith, knew of the filing of the said suit and the issuance of said injunction and the service of said writ, and was bound by such knowledge.

The bill then alleged that:

"Complainant alleges that the said J. W. Cutrer and E. W. Smith willfully and knowingly, and in utter contempt and disregard of the filing of said suit and the issuance of said injunction, in order to circumvent the orders of the court aforesaid, and to prevent the complainant from having an opportunity to try the original bill herein, and to prove the true ownership and title to the said eighteen thousand one hundred fifty-three dollars and forty cents, agreed among themselves, the said J. W. Cutrer and E. W. Smith, to so transfer, and dispose of said cashier's check as to prevent the court in the original cause herein from having jurisdiction thereof, or any control of the said money, and therefore complainant alleges, on information and belief, that, after the said J. W. Cutrer had indorsed and transferred the said cashier's check to said E. W. Smith, both the indorsement and transfer of said check, and the delivery thereof, being with the full knowledge of both the parties of the facts above stated, then combined and confederated and caused the said E. W. Smith to, by chicanery and trickery, turn the said cashier's check over to the Planters' National Bank of Clarksdale, Miss., to collect for them, the said J. W. Cutrer and E. W. Smith, or others of the defendants interested, and thereupon complainant alleges that the said Planters' National Bank of Clarksdale, Miss., who is not in any manner a *bona-fide* purchaser for value of said cashier's check, took the same into its possession, and now claims to be a *bona-fide* purchaser for value thereof, and claims to be the owner thereof, but complainant alleges that the true facts are that the said Planters' National Bank of Clarksdale, Miss., is not a *bona-fide* purchaser for value of said

cashier's check, but, on the contrary, it has procured possession of the same through fraud, chicanery, and trickery, and that it has not paid value for the same, and, if it appears that it has paid value for the same, some other secret arrangement has been made between the said E. W. Smith, J. W. Cutrer, and/or some other of the defendants herein, with the said Planters' National Bank, that they shall be and stand responsible to the said Planters' National Bank for the payment of the said cashier's check, and that the true facts are that the said Planters' National Bank does not own the said check and has no interest therein.''

This amended and supplemental bill reiterated all of the allegations of the original bill, and prayed that the Planters' National Bank of Clarksdale be made a party defendant; and prayed for the issuance of an additional injunction enjoining all the parties to the original bill, including especially E. W. Smith, from selling, assigning, or disposing of any part or portion of either the said cashier's check of eighteen thousand one hundred fifty-three dollars and forty cents, or any of the bonds described in said amended bill, or the proceeds from either said check or bonds. It also prayed that the Planters' National Bank be enjoined from paying out to the said E. W. Smith, or any other person, any part or parcel of any money it then had in its possession or under its control, or which might thereafter be paid to it by any person, firm, or corporation as a result of, or as the proceeds of, said cashier's check. These injunctions were issued and served.

Before the hearing of the motion to dissolve the injunction, the appellant suggested, in writing, that the presiding chancellor was disqualified to hear said cause, and this suggestion was by the court overruled. The motion to dissolve then came on for hearing upon the original bill, the amended and supplemental bill, the process, and the answer of the Bank of Clarksdale, and,

in response to the motion, the court so construed and modified the injunction as to permit the Bank of Clarksdale to pay the said cashier's check to the Planters' National Bank. Before the decree was signed, the appellant asked leave to amend the original bill and the writ of injunction so as to make the injunction apply against the Bank of Clarksdale paying out any of the funds to any of the parties named in the writ, or to their assignees, transferees, or indorsees. The court permitted the amendment to the bill, but denied the proposed amendment to the writ, and, from the decree entered modifying the injunction, this appeal was prosecuted.

For a reversal of the decree of the court below, the appellant assigns two grounds, but our views on the second assignment of error will render it unnecessary to consider the first. The assignments of error are: First, the court erred in holding that he was qualified to sit in said cause; and, second, the court erred in so construing and modifying the writ of injunction as to permit the Bank of Clarksdale to pay said check to the Planters' National Bank.

The original bill was filed to set aside alleged fraudulent conveyances, and it set forth detailed charges of fraudulent practices on the part of the several defendants other than the Bank of Clarksdale, to hinder, delay, and defraud the appellant in the collection of the indebtedness due it by Earl Brewer and J. W. Cutrer. The bill expressly charged that the placing of the money and collaterals involved in the litigation with the Canal Bank & Trust Company, in the Bank of Clarksdale for division, was a part of the scheme to effect the fraudulent transfer of the property of Earl Brewer and J. W. Cutrer; and, unless the said Bank of Clarksdale was restrained by injunction from paying out said funds the defendants in said prior suit would by said compromise receive unlawfully and fraudulently large amounts of money, notes, and evidences of indebtedness, which, in truth and

in fact, belong to the said Earl Brewer, and which would be dissipated and disposed of, or placed beyond the reach of the appellant or any other creditor of the interested defendants. It was specifically charged that the transfers by Earl Brewer of the money and collateral involved in said suit to his daughter, Mrs. Earline Brewer Shelton, and to his attorneys, J. W. Cutrer and E. W. Smith, and by them to Mrs. Holland and Mrs. Cutrer, respectively, were all voluntary, and made with fraudulent intent and with full knowledge on the part of all parties to the transfers of said fraudulent intent as against the appellant.

None of the defendants to the original bill have filed an answer thereto except the Bank of Clarksdale; and in its answer none of the allegations of fraud on the part of the other defendants were denied, and, for the purpose of this decision, they must, therefore, be taken as true. The answer of the Bank of Clarksdale admits that the cashier's check in controversy was a part of the property held by it pursuant to the alleged fraudulent compromise and adjustment of the said prior litigation, and part of the property involved in the alleged fraudulent conveyances and transfers, and there is no averment that the Planters' National Bank was a *bona-fide* purchaser or holder of the check.

The motion to dissolve or modify the injunction was heard upon the pleadings, in which it stands admitted, for the purpose of the hearing of the motion, that the said Planters' National Bank is the holder of the check as indorsee of a payee who obtained it fraudulently; and, this being true, the indorsee is presumed, *prima facie,* to be privy to its indorser's fraud. This doctrine was announced in the case of *Richards* v. *Vaccaro,* 67 Miss. 516, 7 So. 506, 19 Am. St. Rep. 322, in which the court said:

"We concur in the views announced by these courts which hold that proof of fraud on the part of the grantor is sufficient to entitle his creditors to subject the prop-

erty fraudulently assigned, in the absence of evidence showing the claimant to be a purchaser for value and in good faith. We fail to perceive why, in cases of this character, the party assailing the conveyance shall be required to assume the burden of showing participation in the fraud by the purchaser, and the nonpayment of value for the property fraudulently conveyed.

"The decisions holding it to be the duty of the creditor to establish not only the fraud of the seller, but that of the purchaser, seem to rest upon an undue extension of the rule that fraud is never to be presumed but must always be proved by the party alleging it to exist. This rule is so well established as to have become one of the maxims of the law; but it is not true that, where a transaction has been shown to be fraudulent on the part of one of the actors, it is incumbent upon a party claiming or defending against it to show the fraud of the other actor claiming under it. Good faith and legality are presumed to exist in reference to the ordinary business transactions of life, and the burden is upon him who asserts the contrary; but it is otherwise when the transaction is itself unfair, or is *prima facie* shown to be illegal."

In further discussing the basis for this doctrine, the court quotes, with approval, from Bigelow on the Law of Fraud, pp. 131, 132, the following statement:

"But it may still be thought necessary to inquire whether the plaintiff himself has really sustained the burden of proof, so as to require the defendant to come to the support of his defense by merely showing fraud. It may be asked if the plaintiff ought not to go further, and, though he has made a case of fraud in the grantor, offer some definite evidence of notice, or what, for the present purpose, is the same thing—that the conveyance to the defendant was voluntary. The answer of the authorities, though not without here and there a discordant note, is that evidence of the fraud is enough, and this whether the case be one of fraud on creditors or fraud

on a vendor. Such is the better answer in those states in which, in cases of fraud upon creditors, notice to the purchaser is sufficient to defeat his title.''

In the case of *Merchants' & Farmers' Bank* v. *Bank of Winona,* 106 Miss. 471, 64 So. 210, it was held that one in possession of negotiable paper is presumed to be a *bona-fide* holder for a valuable consideration; but, when circumstances in evidence show that the payee from whom the holder claims came into possession of the paper by fraud upon the maker, then the holder must show that he is a *bona-fide* holder for value. Applying this doctrine to the case as made by the record now before us, in which the fraud of the payee of the said check is undenied, the Planters' National Bank, the holder of the check, is presumed to be privy to the fraud of the payee, through whom it claims as indorsee.

The decision of the question here involved need not, however, be rested upon the presumption which arises from the fraud of the indorsers of the check. The appellant filed an amended and supplemental bill in which it was specifically charged that the indorsers thereof fraudulently combined and confederated to turn the said check over to the Planters' National Bank to collect for the said indorsers, or others of the defendants interested, and that the said Planters' National Bank is not a *bona-fide* purchaser for value of said check, but, on the contrary, it procured possession of the same through fraud, chicanery, and trickery, and that it has not paid value for the same, and does not own the said check, and has no interest therein. This amended and supplemental bill was properly taken into consideration on the motion to dissolve; and, since none of the allegations thereof are denied, they must be taken as true as against the appellee. Under these facts, the Planters' National Bank has no greater right to demand or receive payment of this check than its fraudulent indorsers have, and the force and effect of the injunction restraining the Bank of

Clarksdale from paying out these funds to the payee of the check cannot be defeated by a fraudulent indorsement of the check to the indorsees who both presumptively and actually participated in the fraud.

On the record, as it stands, we think it is clear that the original injunction operated to effectually restrain the Bank of Clarksdale from paying the check to the said Planters' National Bank, and that the court erred in so dissolving, modifying, or construing the injunction as to permit such payment; and therefore the decree of the court below will be reversed, the injunction fully reinstated, and the cause remanded.

*Reversed and remanded.*