# ROBINSON *et al.* *v.* McSHANE.

(Division B. April 11, 1932. Suggestion of Error Sustained in Part and in Part Overruled, May 23, 1932.)

[140 So. 725. No. 29939.]

**Pollard & Hamner,** of Greenwood, for appellants.

630

**Alfred Stoner,** of Greenwood, for appellee.

634

Argued orally by **R. V. Pollard**, for appellants, and by **Alfred Stoner**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On the 10th day of April, 1924, A. Robinson, Sr., was the president of the First Savings Bank of Itta Bena. An examination of the bank by the state banking department had disclosed that the said bank was carrying as assets a number of notes aggregating the sum of approximately forty-two thousand dollars, which, in the judgment of the banking department, were worthless as banking assets. This aggregate exceeded the capital stock of the bank, and the banking department demanded that these notes should be paid or adequately secured or else that the said bank should be liquidated. Thereupon, and on the date first mentioned, the said Robinson and the other directors executed a written guaranty to the said First Savings Bank, obligating themselves jointly and severally for the full payment of said notes and to the full aggregate amount thereof as above stated. This guaranty was substantially similar in legal effect to the obligation which was upheld by this court in Love v. Dampeer, 159 Miss. 430, 132 So. 439. And we are of opinion that the contents of that written guaranty could be proved by a certified copy thereof under section 3764, Code 1930, as was done in this case.

On June 16, 1924, the said A. Robinson, Sr., became the indorser of a series of notes, executed by Polk and Williamson, and payable to appellee's decedent in the aggregate sum of approximately sixteen thousand dol-

lars; these notes being secured by a second mortgage on a plantation in Humphreys county. There was a first mortgage on this plantation in favor of the Federal Land Bank for the security of a loan of approximately twenty-seven thousand dollars. The appraiser for the land bank testified that the first mortgage loan represented about fifty per cent. of the appraised value of the plantation at the date last aforesaid, that is to say, on June 16, 1924, and that the estimated value of the plantation did not suffer any material change during the remainder of the year 1924. In other words, that there was an appraised value in said plantation of about twenty-six thousand dollars in excess of the federal farm loan, and which in consequence would give an estimated value in excess of the combined amounts of the said first and second mortgages of about ten thousand dollars.

On December 5, 1924, A. Robinson, Sr., found it necessary to undergo a dangerous surgical operation, from which he anticipated that he would probably not recover, owing to his advanced age. He owned two valuable delta plantations, and on the date aforesaid he conveyed to his son, A. Robinson, Jr., one of these plantations, and to his son, Wm. S. Robinson, the other plantation, by deeds of gift. These two plantations comprised all the real estate owned by A. Robinson, Sr., except an exempt homestead and some small lots in the state of Oklahoma valued at fifteen hundred dollars. However, Mr. Robinson at the time owned and retained certain personal property in the form of corporation stock, notes, cotton, and cash, in the aggregate of about twenty-nine thousand dollars, which, added to the Oklahoma real estate, made a total of approximately thirty thousand, five hundred dollars.

Subsequently, the said sixteen thousand dollars secured by the second mortgage not having been paid, and interest and taxes having gone into default, the said second mortgage was foreclosed, subject to the first mortgage. At the foreclosure sale, the property brought only

one hundred dollars, and this suit was brought in the chancery court to recover the deficiency, and to set aside the deeds to said plantations by Mr. Robinson to his sons as being in fraud of his creditors, and particularly of the debt held by appellee's decedent. There was a decree sustaining the bill, and the case has been brought here for review.

The applicable law is well settled in this state, and a succinct statement of it is that, if a debtor, and especially if he be largely indebted, convey a substantial portion of his property for a nominal consideration or by way of gift, this is presumptively fraudulent as to existing creditors, and the burden will rest upon the defendant to rebut the presumption by showing that the debtor retained property easily accessible to execution and amply sufficient in the ordinary course of events to satisfy his then existing legal liabilities. Golden v. Goode, 76 Miss. 400, 24 So. 905; Ames v. Dorroh, 76 Miss. 187, 197, 23 So. 768, 71 Am. St. Rep. 522.

The amount of property retained, counting the personal property mentioned, was thirty thousand, five hundred dollars; and, even if we add the twenty-six thousand dollars appraised margin in the property covered by the second deed of trust on the Humphreys county plantation, this would make a total of fifty-six thousand, five hundred dollars; whereas the existing legal liabilities amounted to fifty-eight thousand dollars; from which it at once appears that the voluntary grantees have not brought themselves within the general rule which would save them.

The argument is urged upon us, however, that the sixteen thousand dollars of notes upon which Mr. Robinson was indorser and which form the basis of this suit should not in the case at bar be included in the computation to which we have just referred, for the reason that appellee has the right to complain only of a voluntary transfer which, at the time made and according to the

ordinary course of events, then operated to his injury; and that, since the particular sixteen thousand dollars held by appellee was then amply secured by a margin of twenty-six thousand dollars in appraised value under the said second mortgage, the said appellee, so far as he is concerned, had property expressly retained to his benefit, easily accessible and amply sufficient.

For the sake of the argument, we may concede that, where a debt is amply, or well, or abundantly secured by real property, and where the creditor rested satisfied with the security, the creditor holding such security cannot complain of a voluntary conveyance of other property by the debtor, Polk County Bank v. Scott (C. C. A.), 132 F. 897; but here the creditor, McShane, was not satisfied with the security of the second mortgage, because he required the notes to be indorsed by Robinson; and, in the second place, we cannot say from this entire record that the chancellor was manifestly in error in his holding, the legal effect of which is that the security of said second mortgage did not in fact fulfill the requirement of being amply sufficient. It is true, as already mentioned, that, according to the witness who appraised the Humphreys county plantation, there was a margin above the first mortgage, and that the margin aforesaid amounted, in his opinion, at that time, to about twenty-six thousand dollars. But opinions on the subject of the value of real estate, and the like, are at last only opinions in the nature of guides, and are not assertions of actual fact; whence they are not conclusive on the trier of the facts, although uncontroverted by other opinions of other witnesses. The trier of the facts may take into consideration all the other facts and circumstances shown in the entire testimony and apply to the case general common knowledge, and thus test out the issue upon the basis of reason and experience, in the doing of which opinion evidence of values is advisory and not absolutely bind-

ing. See numerous cases cited footnotes, 22 C. J., pp. 729 et seq.; 13 Ency. Ev. 481.

Touching the contention that the decree is erroneous in that it did not expressly direct that execution should first be directed against Polk and Williamson, the primary obligors, and that the plantations of the Robinson sons should be sold only after exhausting all proper process against said Polk and Williamson, it may be conceded, but without deciding to that effect, that the decree is technically erroneous in the respect mentioned; nevertheless, it could not for that reason be reversed on this record, since there is no showing in the record that either Polk or Williamson has any property subject to execution. Consequently, the record fails to disclose that the error mentioned, if error, is one of any harm to appellants. It cannot be assumed, in the absence of proof, that Polk and Williamson have any such property, but rather the assumption would be that they have not, else appellee would have proceeded against it. This would have been the right and honorable course for appellee to have pursued, and, when there is no proof to the contrary, the presumption is that a right and honorable course has been pursued. The record indicates that the point dealt with in this paragraph was not raised in the trial court; and if in fact Polk and Williamson have any property which can be reached, there are at least three remedies open to those secondarily liable in this transaction by which to obtain justice and to enforce the application of that property first to the payment of this particular debt.

Affirmed.

## On Suggestion of Error.

The suggestion of error is overruled except as to that part of the judgment taxing appellant with the costs in the court below, to that extent it is sustained.