DYESS *v.* EVERETT, TRUSTEE

No. 40225 October 8, 1956 89 So. 2d 734

*J. W. Kellum,* Sumner; for appellant.

*Breland & Whitten,* Sumner, for appellee.

LEE, J.

E. H. Everett, Trustee in Bankruptcy, brought this suit against Mrs. Sue Hammond Dyess to cancel, as a fraudulent conveyance, a quitclaim deed dated October 3, 1951, executed to her by her husband, W. S. Dyess, insofar as it affected the right of the complainant to collect an indebtedness owing to A. J. Hill. Herbert C. Stillions, Jr. was made a defendant for discovery purposes only. There was a decree for the complainant, and Mrs. Dyess appealed.

The bill charged that on March 3, 1950, W. S. Dyess was indebted to A. J. Hill in the sum of $3,000, evidenced

by three promissory notes of $1,000 each, payable November 1, 1951, 1952, and 1953, respectively; that, at the time, W. S. Dyess owned an undivided interest in 178 acres of land in Coahoma County, which he and his three children had respectively inherited from their wife and mother, Mrs. Tommie Elkins Dyess, at her death; that on September 25, 1951, W. S. Dyess and his second wife, Mrs. Sue Hammond Dyess, conveyed the undivided interest in the land to the said three children, but reserved a life estate thereto during the lifetime of W. S. Dyess; that W. S. Dyess, by quitclaim deed of date of October 3, 1951, "FOR A GOOD AND VALUABLE CONSIDERATION", conveyed the land to Mrs. Dyess; that on January 10, 1955, after the three notes were past due, A. J. Hill filed suit in the circuit court to recover their value; and that on the 22nd day of January thereafter, W. S. Dyess filed a voluntary petition in bankruptcy listing, as his sole creditor, A. J. Hill in the amount of $3,960, on account of the three notes, and was at the time adjudged to be a bankrupt. These allegations were undisputed.

The bill further charged that the deed in question was without consideration and was a voluntary conveyance; and that it was made by collusion between W. S. Dyess and his wife with the fraudulent intent or purpose of placing the title to the land beyond the reach of W. S. Dyess' creditors, especially A. J. Hill. The defendant, in her answer, denied the foregoing allegations; and in addition thereto, she averred that the conveyance was made to her in good faith for a valid indebtedness due her, which was equal to the value of her husband's interest in the land.

Actually the sole issue was whether this was a good faith conveyance, or whether it was in fact fraudulent.

Mrs. Dyess testified that she was teaching in the Rome elementary schools, and that Kathryn Ann Dyess, her husband's daughter, went to college in September before she and W. S. Dyess were married in April 1949. She

knew at that time that A. J. Hill was furnishing her husband money to make a crop, and that this arrangement was continued for another year. Although she kept her husband's farm books, she denied that she knew that he owed Hill any money. Her husband continued to rent the land after the conveyance, and ever since 1951 he has collected the rents. The written lease contract for 1955 was between W. S. Dyess and H. C. Stillions, Jr. There were two rent notes for that year in the sum of $1,000 and $1,300. Her husband handled these notes and borrowed money on them. Upon collection of the rent, he paid off the notes at the banks, and kept the balance of the rent to pay the installment and interest on an outstanding deed of trust for $6,000. She admitted that she was not a bookkeeper, did not have a regular set of books, would not know how to keep them, but that she kept "sort of an account of the expenses on the place." She stated that, from May 1949 to June 1951, she let her husband have $3,450. She admitted that she owned no real estate and had never had much money in the bank. These claimed advances were as follows: May 29, 1949, $250.00; July 16, 1949, $300.00; Sept. 1, 1949, $500.00; Nov. 25, 1949, $100.00; Dec. 31, 1949, $300.00; March 15, 1950, $200.00; June 1, 1950, $300.00; Sept. 1, 1950, $500.00; Dec. 24, 1950, $350.00; March 1, 1951, $500.00; June 1, 1951, $150.00.'' She produced no vouchers of any kind to show withdrawals of this money from banks or other depositories. She and her husband were both present when the deed in question was executed. She further testified that she did not know, at the time of the execution of the deed, that her husband owed Hill anything; and she denied that the deed was executed fraudulently to put the title beyond the reach of Hill's claim.

A. J. Hill testified that, at the time of the execution of the notes, the amount of the indebtedness to him was $3,400. This money was advanced for crop production and for the education of Kathryn Ann Dyess, some of

which had been advanced during the lifetime of her mother. Out of a crop production loan from another lender, Dyess applied $400 to reduce the amount to $3,000, and this sum was acknowledged in the three notes. He was unable to give all of the details of the original account because, after the execution of the notes, Dyess asked to see the ledger, and he tore the page out, threw it into the fire and burned it.

Dyess' life expectancy was shown to be about 18 years, the value of the land about $150 per acre, and the value of the life estate $20,000.

Appellant contends that the evidence was insufficient to sustain the allegations of the bill of complaint. Among other things she says that the bill of complaint did not positively allege fraud, and that her sworn answer to the contrary was not overcome by two witnesses, or one witness and corroborating circumstances; that the proof did not establish her participation in any fraud; and that the court failed to find affirmatively the value of the life estate of W. S. Dyess.

A reading of the bill of complaint leaves no doubt that the facts constituting fraud were set out positively and definitely. Of course fraud may be charged upon the knowledge of the complainant, or on information and belief. Griffith, Miss. Chancery Practice, 2d ed., Section 501, pp. 508-9.

The deed did not recite what the consideration was. It merely said, "FOR A GOOD AND VALUABLE CONSIDERATION". The appellant, by her testimony, undertook to say that the actual consideration was the previous advance by her of $3,450 to her husband, as shown above. But she produced no vouchers or other evidence of such advances, and her version was, therefore, incredible. It is passing strange that, in the absence of a reasonable explanation as to its source, Mrs. Dyess had so much money scattered around the house, or on her person, as

to be in position to lend her husband these substantially large sums from time to time. The court properly concluded that she made no advances, and that no such consideration existed. Her sworn answer, it is true, denied any fraud; but her testimony relative to advances to her husband wholly discredited her pleading. In this situation, the conveyance obviously was voluntary, and was properly set aside as fraudulent. Robinson v. McShane, 163 Miss. 626, 140 So. 725; Odom v. Leuhr, 226 Miss. 661, 85 So. 2d 218.

 █ In view of all of the evidence in this case, the court had ample justification in finding that Mrs. Dyess knew that her husband was indebted to Hill; that she was not a purchaser for value and in good faith; and that by the execution of this deed she and her husband purposed and intended to put the title to this land beyond the reach of Hill's claim. Richards v. Vaccaro & Company, 67 Miss. 516, 7 So. 506; Mississippi Valley Trust Company v. Brewer, 151 Miss. 170, 117 So. 540. W. S. Dyess' interest in this land constituted his largest asset. The execution and recordation of the two conveyances in September and October conveniently antedated the due date of the first note to A. J. Hill for only a short time. If the consideration was feigned, obviously the appellant participated in the fraud. █ Consequently the appellee had the right to a judicial sale of the W. S. Dyess interest in the land, without reference to the claim of appellant, and it was unnecessary for the court to adjudicate the value of the life estate.

From which it follows that the decree of the trial court must be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.