# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-00742-SCT

*BRANDON J. BARNETT a/k/a BRANDON JAY*
*BARNETT a/k/a BRICK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/19/2023 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| TRIAL COURT ATTORNEYS: | MATTHEW CHISOLM SHERMAN |
| | J. RONALD PARRISH |
| | DENNIS LEE BISNETTE |
| | BRAD RODRICK THOMPSON |
| | KRISTEN E. MARTIN |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KATY TAYLOR SARVER |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 01/30/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Brandon J. Barnett appeals his conviction for sale of methamphetamine.  He argues

the trial court reversibly erred by giving a jury instruction that improperly commented on the

weight of the evidence.  We agree.

¶2.    Instruction S-3A told the jury that "it is permissible for a technical reviewer to testify in place of the primary analyst even if the witness did not perform the analysis first hand . . . ." At Barnett's trial, the forensic analyst who actually tested the substance Barnett sold to a confidential informant did not testify. Instead, the State called a different analyst. That analyst testified as a technical reviewer and gave her expert opinion that the substance Barnett sold was 3.01 grams of methamphetamine. On cross-examination, Barnett's counsel seized on the fact that, as technical reviewer, the testifying analyst never personally observed the purported methamphetamine. Nor did she test the substance. The trial court granted Instruction S-3A over Barnett's objection. The judge explained that he did so out of "fear that"—based on the defendant's cross-examination—"there's a question in the jury's mind about the propriety of [the analyst's] coming to testify about a test that she did not conduct."

¶3.    We find the trial court, by granting the instruction, erroneously conflated the *admissibility* of the analyst's testimony—which is a question of law for the trial court to decide—with its *weight* and *credibility*—which are questions in the jury's exclusive purview. The case law the judge cited for Instruction S-3A addressed the *admissibility* of a technical reviewer's testimony in light of Confrontation Clause protections.[1] But here admissibility is not the question. Indeed, the jury had no role in deciding the admissibility of witness testimony—that was the trial judge's job. And the trial court had already accepted the analyst as an expert, permitted her to testify, and admitted the drug lab report in evidence. Instead,

---

[1] ***Jenkins v. State***, 102 So. 3d 1063, 1065-69 (Miss. 2012) (applying the Sixth Amendment of the United States Constitution and Article 3, Section 26, of the Mississippi Constitution).

the jury had to decide if the technical reviewer's testimony was *credible* and of *sufficient weight* to support finding an essential element of the crime beyond a reasonable doubt—namely, that the substance Barnett sold was methamphetamine. By specifically instructing the jury that the State's analyst could testify "even if" she "did not perform the analysis first hand," Instruction S-3A improperly commented on the weight of her testimony.

¶4. Thus, the trial court abused its discretion by granting this instruction. We reverse Barnett's conviction and remand this case for a new trial.

## Background Facts & Procedural History

¶5. Following her arrest for possession of a controlled substance, Kimberly Dido worked as a confidential informant for the Jones County Sheriff's Department in exchange for her charges being dropped. Dido had bought drugs from Barnett, a/k/a Brick, before. So on August 16, 2021, she set up a buy with him.

¶6. Before the buy, Dido met with narcotics investigators. They searched her body and vehicle for contraband and currency. Then, they fitted Dido with a hidden video camera and gave her four $20 bills. Dido went to Barnett's house and traded the cash for drugs. She returned to the investigators and turned over the drugs. Later testing revealed the substance Dido obtained was 3.01 grams of methamphetamine.

¶7. The State charged Barnett with selling methamphetamine.[2] Dido testified at trial that Barnett sold her the drugs. During her testimony, the State played the video recording of the buy. Three officers involved with the controlled buy also testified. So did Charlotte

---

[2] Mississippi Code Section 41-29-139(a), (b)(1)(B) (Rev. 2018).

Cothern, who was admitted as an expert in forensic lab testing and drug analysis. But the primary analyst who tested the substance did not testify. When cross-examined about this absence, Cothern made clear that she did not personally test the substance. Nor did she analyze it. But she agreed with the tests and results, and she explained the tests revealed the substance the State submitted was 3.01 grams of methamphetamine.

¶8. The jury found Barnett guilty. He was a non-violent habitual offender.[3] And the court sentenced him to twenty years' imprisonment, to be served day for day.[4]

¶9. Barnett timely appealed. While Barnett raises two issues, his claim that Instruction S-3A improperly commented on the weight of the technical reviewer's testimony is dispositive and warrants a new trial. So we focus on this issue.

## Discussion

¶10. Barnett argues the trial court reversibly erred by granting Instruction S-3A over his objection. He asserts the instruction improperly commented on the weight of the evidence. We agree. While jury instructions are within the discretion of the trial court, *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010), here, the trial court abused its discretion. This Court has been clear that instructions should not "comment on the weight of the evidence" or "direct jurors' attention to the quality or weight of the evidence." *Howell v. State*, 860 So. 2d 704, 745 (Miss. 2003). And in this case, that is what Instruction S-3A did.

¶11. Instruction S-3A advised the jury that "it is permissible for a technical reviewer to

---

[3] Miss. Code Ann. § 99-19-81 (Rev. 2020).

[4] Barnett originally received an enhanced sentence for selling methamphetamine within 1,500 feet of a church. But the trial court later vacated that portion of his sentence.

4

testify in place of the primary analyst even if the witness did not perform the analysis first hand, as long as the witness has intimate knowledge of the analyses and was actively involved in the production of the report at issue." Barnett's counsel objected. He argued the instruction unfairly singled out an individual witness's testimony. The State responded that the instruction merely states the law about technical reviewers, with language taken directly from *Jenkins*, 102 So. 3d at 1067-68.

¶12. But *Jenkins* concerned the *admissibility* of a technical reviewer's testimony in the face of a Confrontation Clause challenge. *Id.* at 1065-69. It did not delve into issues about a technical reviewer's *credibility* or the *weight* to give such testimony. Admissibility and credibility are two entirely separate issues. *See, e.g.*, *Clark v. State*, 315 So. 3d 987, 997 (Miss. 2021) (deeming a trial court's determination that one expert was more credible than the other to be "irrelevant to the admissibility" of the other expert's testimony).

¶13. It is the trial judge's role—as evidentiary gatekeeper—to decide if an expert's testimony is admissible. *Poole ex rel. Wrongful Death Beneficiaries of Poole v. Avara*, 908 So. 2d 716, 723 (Miss. 2005) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). But once the expert is qualified as an expert and permitted to testify—as Cothern was here—it became the jury's exclusive role to determine the credibility and weight of the expert's testimony. *Banks ex rel. Banks v. Sherwin-Williams Co.*, 134 So. 3d 706, 711 (Miss. 2014) ("Determinations of weight and credibility of expert witnesses lie 'within the sole province of the jury as fact finder.'" (quoting *Butler v. State*, 102 So. 3d 260, 268 (Miss. 2012))); *Miss. State Highway Comm'n*

*v. Stout*, 242 Miss. 208, 134 So. 2d 467, 473 (1961) ("The jury should give the testimony of the expert witnesses such consideration as it believes them entitled to receive." (citing *Warren Cnty. v. Harris*, 211 Miss. 80, 50 So. 2d 918 (1951); *Robinson v. McShane*, 163 Miss. 626, 140 So. 725 (1932))), *overruled on other grounds by Leflore v. Miss. State Highway Comm'n*, 390 So. 2d 284 (Miss. 1980).

¶14. The dissent misses this point. The dissent focuses instead on the admissibility and sufficiency of Cothern's testimony. But the admissibility and sufficiency of her testimony are not at issue. The trial judge properly admitted Cothern's expert testimony and the drug lab report. And he also clearly ruled that the State's evidence—when viewed favorably toward the State—was sufficient to survive Barnett's motion for a directed verdict. Barnett does not attack either of these two commonplace judicial rulings on appeal, and neither do we. So the dissent's lengthy defenses and justifications of them are unnecessary.

¶15. What the dissent does is confuse the real issues before the jury—what weight and credibility to give Cothern's testimony—with issues the trial judge had already resolved during trial, long before the jury began deliberations.

¶16. The reality of criminal trial practice is that there are centuries of legal precedent relevant to criminal cases. But they are not all painstakingly memorialized in separate jury instructions in each case. The reason they are not is because they speak mostly to *legal* questions—for example here, the admissibility of witness testimony in light of the Confrontation Clause. And such *legal* questions *do not* fall within the jury's *fact-finding* role. In criminal cases, the judge almost always instructs the jury on this bedrock principle,

6

just as the judge did here.[5]  But if the dissent's view became our new law, hosts of jury instructions relevant to a judge's evidentiary decisions would be forced on the jury, despite their not being relevant to the factual questions the jury must resolve.

¶17.  For example, our law is clear that in conspiracy cases, statements made by co-conspirators in furtherance of the conspiracy are not hearsay by definition.  *See* MRE 801(d)(2)(E).  But surely the dissent would not suggest it is proper for a trial judge to specifically instruct the jury on this evidentiary premise just because a defense attorney has made hay by pressing a witness's credibility when she is testifying about a coconspirator's statement.

¶18.  Similarly, here, no need existed to instruct the jury on Mississippi Rule of Evidence 803.  Nor did need exist to instruct the jury on the admissibility of expert reports. The jury does not apply evidentiary rules.  It also does not decide what evidence is admissible—the trial judge does.  The same is true for Instruction S-3A.  There is no need to instruct on the whether it is *permissible* for a technical reviewer to testify instead of the analyst who performed the test.  That is because the trial judge had already admitted the lab report and ruled that Cothern could testify about the results.  And since Cothern was clearly permitted to testify—and did testify—there was no reason to give Instruction S-3A other than

---

[5] The judge instructed:  "From time to time during the trial, it has been my duty to rule on the admissibility of evidence. You *must not* concern yourselves with the reasons for the Court's rulings since they are controlled and governed by Rules of law."  (Emphasis added.)

7

to bolster or rehabilitate her credibility once Barnett's attorney had cross-examined her.[6]

¶19.    While the trial judge acknowledged a technical reviewer's "credibility is fair game just like any other witness," the record shows the trial judge granted Instruction S-3A due to weight and credibility concerns.  The trial judge noted that, during the defense attorney's cross-examination of Cothern, "there was a lot about [how Cothern was] not even the one that conducted the test . . . and her lack of ability to testify about a test that she did not conduct."  In the trial judge's own words, he "fear[ed] there's a question in the jury mind about the propriety of her coming to testify about a test that she didn't conduct."  "[I]n light of the how the testimony now stands," the trial judge thought "the jury needs to hear the law that it is permissible for a reviewer to testify in place of the person that actually conducted the test."

¶20.    In other words, while the trial judge certainly had good intentions, Instruction S-3A was essentially aimed at rehabilitating or propping up Cothern's testimony after the defense

_____

[6] The dissent suggests we presume too much about the jurors' legal knowledge by concluding the jury did not need this instruction.  Diss. Op. ¶ 32.  But, again, the dissent misses what the language in the instruction was about.  As the State admitted, the "permitted" language was pulled straight from *Jenkins*.  And *Jenkins* was about whether it is permitted *in the face of a Confrontation Clause challenge* for a technical reviewer to testify.  *Jenkins*, 102 So. 3d at 1069.  So were *Hingle v. State*, 153 So. 3d 659, 663 (Miss. 2014), and *Grim v. State*, 102 So. 3d 1073, 1081(Miss. 2012)—the two other cases the dissent cites to argue Instruction S-3A is an accurate statement of the law.

While the dissent is right that we cannot "know the amount of legal knowledge that each individual juror may or may not possess," it is probably a safe bet that your average juror is not worried about whether a technical reviewer's testimony violated the defendant's right to confront the witness against him.  Diss. Op. ¶ 32.  Thus, there is no need assuage any constitutional concern by instructing the jury that Cothern's testimony passes Confrontation Clause muster.

attorney cross-examined her. This was error. *See **Miss. State Highway Comm'n v. Robertson***, 350 So. 2d 1348, 1352 (Miss. 1977) (finding reversible error when jury instructions told the jury they "should consider" the defendant landowner's testimony but cautioned the jury not to "blindly follow[]" plaintiff's expert testimony). "An expert witness is subject to 'wide-open cross-examination' on 'any matter that is relevant.'" ***Murray v. Gray***, 322 So. 3d 451, 462 (Miss. 2021) (quoting ***Redding v. Miss. Transp. Comm'n***, 169 So. 3d 958, 964 (Miss. Ct. App. 2014)). And "[i]n every case where an expert witness is allowed to express an opinion such witness is subject to cross-examination as to the basis of h[er] opinion." ***City of Laurel v. Upton***, 253 Miss. 380, 175 So. 2d 621, 625 (1965) (holding defendants had the right to cross-examine plaintiff's medical expert about basing his opinion in part on another doctor's report).

¶21. In ***Williams v. State***, this Court found reversible error when the jury was instructed that "*even though* there is an expert opinion of a psychiatrist, his opinion is not conclusive" on "whether the defendant . . . appreciated the nature and consequences of his act . . . ." ***Williams v. State***, 354 So. 2d 266, 267 (Miss. 1978) (emphasis added). While the instruction "may be said to be a correct statement of the law in abstract form," under the circumstances of that case, this Court found the instruction improperly commented on the weight of the expert's opinion. *Id.* at 267-68. "'Even though' certainly would logically give to the jurors the impression that in this particular case the psychiatrist's opinion was, in the judgment of the court, worthy of little if any consideration at all." *Id.* at 268.

¶22. We similarly find reversible error here. Instruction S-3A may have been a correct

9

statement of the law about the admissibility of a technical reviewer's expert testimony. But under the circumstances, it is an improper comment on the weight of the expert's opinion. Telling the jury that a technical reviewer is permitted to testify "even if" she did not did not conduct the test herself, just as in *Williams*, "logically give[s] the jurors the impression" that Cothern's testimony should, in the judgment of the court, be given much consideration. *Id.* And it violates the "well established" prohibition "that instructions to the jury should not single out or contain comments on specific evidence." *Duckworth v. State*, 477 So. 2d 935, 938 (Miss. 1985). Cothern herself testified about her knowledge and experience with the testing methods used. And she explained her qualifications for providing the opinion that the substance tested was methamphetamine. She also testified that it was standard procedure to review tests performed by the assigned analyst and that she agreed with the analysis and testing results. The jury should have been allowed to assess Cothern's testimony on its own merits without further—and admittedly rehabilitative—comment from the court.

¶23. Because of the improper jury instruction, we reverse Barnett's conviction and remand this case for a new trial.

¶24. **REVERSED AND REMANDED.**

**KING AND COLEMAN, P.JJ., CHAMBERLIN, ISHEE, GRIFFIS AND SULLIVAN, JJ., CONCUR. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRANNING, J.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶25. Brandon Barnett's guilt was overwhelming; in basketball vernacular, the case was a slam dunk. Barnett assigns no error to exhibit S-6, an audio and video recording that

revealed him selling a white crystal-like substance to Kimberly Dido in exchange for eighty dollars. Barnett assigns no error to the admissibility of the evidence bag containing the substance, exhibit S-3. Barnett assigns no error to the photocopy of the eighty dollars that Dido used in the transaction, exhibit S-2. Barnett assigns no error to the trial judge's decision to admit a certified report of the Mississippi Crime Laboratory, exhibit S-6, which confirmed that the substance Barnett sold to Dido was 3.01 grams of methamphetamine—a Schedule II controlled substance.[7]

¶26. The record is compelling throughout the trial that the trial judge informed the jury on *multiple* occasions that it was within their province to determine the credibility and weight of each witness's testimony and of the exhibits presented.[8] The jury did so and returned a guilty verdict.

¶27. So what remains for Barnett to challenge? Barnett contends that the trial court erred

---

[7]Barnett was found guilty of selling methamphetamine within 1500 feet of a church pursuant to Mississippi Code Sections 41-29-139, -142 (Rev. 2018). Exhibit S-7 was a map purporting that Barnett's transaction with Dido occurred within 1500 feet of Highlands Baptist Church in Laurel, Mississippi. Barnett filed a post-trial motion challenging the sufficiency of exhibit S-7 to prove the sentencing enhancement. The trial judge agreed and entered an order amending Barnett's sentence by vacating the sentencing enhancement.

[8]In the trial judge's final charge to the jury, instruction C-1 directed in part that the jury must "carefully scrutinize all the testimony given, the circumstances under which each witness . . . testified, and every matter in evidence which tends to show whether a witness is worth of belief." Instruction C-1 further informed the jury that "[i]t is your exclusive province to determine the facts in this case and to consider and weigh the evidence for that purpose." Instruction C-1 additionally informed the jury in part that "[y]ou are not to single out any one Instruction alone as stating the law, but you must consider all of the Jury Instructions as a whole." Moreover, in jury instruction S-1, the jury was informed that if the prosecution failed to prove any essential element of the crime beyond a reasonable doubt, then the jury was required to find Barnett not guilty.

11

by improperly commenting on the weight of the evidence in jury instruction S-3A. S-3A reads verbatim:

> The Court instructs the jury that it is permissible for a technical reviewer to testify in place of the primary analyst even if the witness did not perform the analysis first hand, as long as the witness has intimate knowledge of the analyses and was actively involved in the production of the report at issue.

¶28. The Court's longstanding principle when reviewing a trial judge's decision to grant or deny a proposed jury instruction is that if the *instructions*, when read *together*, (1) "fairly announce *the law* of the case" *and* (2) "*create no injustice*," then "*no reversible error will be found.*" **Stewart v. State**, 378 So. 3d 379, 388 (Miss. 2024) (emphasis added) (internal quotation mark omitted) (quoting **Montgomery v. State**, 253 So. 3d 305, 316 (Miss. 2018)); *see also* **Rayburn v. State**, 312 So. 2d 454, 456 (Miss. 1975). Moreover, "this Court has held that instructions which emphasize any particular part of the testimony *in such a manner* as to amount to a comment on the weight of that evidence are improper." **Sanders v. State**, 586 So. 2d 792, 796 (Miss. 1991) (emphasis added) (citing **Duckworth v. State**, 477 So. 2d 935, 938 (Miss. 1985)). The instruction at issue in today's case does not.

¶29. Charlotte Cothern was employed as a technical reviewer at the crime lab. Generally, a primary analyst physically examines the substance. The primary analyst first performs a preliminary test, and if the preliminary test yields a presumptively positive result, the analyst then conducts a confirmatory test. A work packet is prepared that logs the results of the tests. The technical reviewer, i.e., the primary analyst's supervisor, examines the work packet to ensure that the primary analyst has followed the proper protocol in obtaining and recording their findings. If the reviewer approves of the methodology, the reviewer certifies the results

12

of the work packet in a final crime lab report, which is signed by the reviewer. This is what occurred in today's case.

¶30.    The majority does not opine that S-3A is an inaccurate statement of law. The report had to be authenticated pursuant to Mississippi Rule of Evidence 803(6) to be admitted.[9] It is uncontested that the trial judge properly admitted the report. This Court has unambiguously held that "a supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was actively involved in the production of the report and had intimate knowledge of the analyses even though he or she did not perform the tests first hand." *Hingle v. State*, 153 So. 3d 659, 663 (Miss. 2014) (internal quotation marks omitted) (quoting *Grim v. State*, 102 So. 3d 1073, 1081 (Miss. 2012); *Jenkins v. State*, 102

---

[9]**(6) *Records of a Regularly Conducted Activity.*** A record of an act, event, condition, opinion, or diagnosis if:

(A)    the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B)    the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C)    making the record was a regular practice of that activity;

(D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11); and

(E)    the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Miss. R. Evid. 803(6). *See also* Fed. R. Evid. 803(6) (containing a nearly identical rule).

So. 3d 1063, 1069 (Miss. 2012)).

¶31.    S-3A was clearly not a peremptory instruction. It provided a statement of law to the jury conditioned on their determination of specific factual questions. If, based on Cothern's testimony, the jury found that she did not have intimate knowledge of the analysis in testing the substance for Barnett, the jury was free to disregard her testimony as well as the lab report. The same is true had the jury found that Cothern was not actively involved in producing the lab report. Conversely, if the jury had answered both questions affirmatively, S-3A merely informed that the prosecution did not fail to meet its burden based on the sole fact that the reviewer was called in place of the analyst. It made no comment on the weight of the evidence nor did it bolster the credibility of Cothern.

¶32.    The majority opines that the average juror would know that it was permissible for Cothern to testify in place of the primary analyst in her capacity as a technical reviewer from the fact that she was allowed to take the stand in the first place. No one can know the amount of legal knowledge that each individual juror may or may not possess. Parties are permitted to propose instructions to provide jurors with accurate statements on a particular point of law, and trial courts are aptly positioned to grant proper instructions in their sound discretion.

¶33.    The jury was required to determine whether the substance obtained from Barnett was a controlled substance to convict him of selling methamphetamine. Barnett's defense counsel contended when moving for a directed verdict that the prosecution failed to put on proof that Barnett sold a controlled substance because "[t]he only person testifying on behalf

14

of the crime lab was a technical reviewer, *who is not able to testify as to the substance that was analyzed*, which she didn't participate in." (Emphasis added.) Later, in responding to an objection during the instruction conference, the trial judge expressed that

> [U]nder the law from the Supreme Court it is permissible for the State to bring the reviewer as long as these requirements are met. . . . And without this information the jury will hear you argue that the State has failed because they didn't go get the person that did the test, and that's contrary to the law because the law says they can bring the reviewer.

¶34. Had S-3A informed the jury that it should believe Cothern or that her testimony alone was sufficient to conclusively establish an element of the crime, then this would be a horse of a different color. But this is nothing more than an attempt to take portions of the trial judge's words out of the context in which they were spoken to infer a prejudicial motivation for granting S-3A.

¶35. In ***Robinson v. State***, the Court reviewed an instruction that stated in part: "*you have heard evidence during the trial that the witness, Darius Wright, identified the defendant. The identification of the defendant by a single eyewitness, as the person who committed the crime, if believed beyond a reasonable doubt, can be enough evidence to convict the defendant.*" ***Robinson v. State***, 247 So. 3d 1212, 1222 (Miss. 2018). In that case, the two dissenting Justices opined that "[t]he problem with Instruction S-14A was that, although there were numerous eyewitnesses to the shooting, it focused the jury's attention on the State's strongest eyewitness[.]" ***Id.*** at 1238 (Kitchens, P.J., dissenting). Like the majority in the case sub judice, the dissent in ***Robinson*** selected portions of the trial judge's words spoken outside the presence of the jury to find that the challenged instruction created an

15

injustice against the defendant. *Id.*

¶36. The majority in *Robinson*, however, held that "the mere mention of Wright's testimony in Instruction S-14 did not amount to an improper comment on the weight of the evidence." *Robinson*, 247 So. 3d at 1223-24 (majority opinion). The majority found that "Instruction S-14A did not require the jury to assign a certain weight to Wright's testimony." *Id.* at 1223. The majority further found that "Instruction S-14A did not require the jury to convict Robinson even if it believed Wright's testimony." *Id.* Additionally, the instruction provided a correct statement of law. *Id.* (quoting *Doby v. State*, 532 So. 2d 584, 591 (Miss. 1988)). The majority concluded that "Instruction S-14A left to the jury the task of judging the credibility of Wright's testimony and weighing it against the other evidence presented at trial." *Id.* at 1223.

¶37. The same is true today. S-3A contained an accurate statement of law applicable to today's case. The trial judge's decision to grant S-3A did not prejudice Barnett or create an injustice against him. Accordingly, the trial judge did not commit reversible error by granting S-3A.

      **BRANNING, J., JOINS THIS OPINION.**

16